STATE of Wisconsin, Plaintiff-Appellant,

v.

Cary JOHNSON, Defendant-Respondent.

Court of Appeals

*No. 94–2916–CR. Submitted on briefs March 6, 1995.—Decided April 4, 1995.*

(Also reported in 535 N.W.2d 441.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Maureen McGlynn Flanagan,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Owen F. Monfils* of Green Bay, and *Mark P. Howe,* assistant counsel, of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. The State appeals part of the trial court's order excluding from evidence in the State's case-in-chief statements Cary Johnson made after a polygraph examination. The State contends that Johnson's statements made after a polygraph examination are fully admissible because they were voluntary non-custodial statements separate from the actual polygraph. Because we conclude that the post-polygraph statements were distinct from the actual mechanical polygraph examination and that Johnson's statements were voluntary, we reverse the part of the trial court's order excluding this evidence from the State's case-in-chief. We affirm the part of the trial court's order that allows such evidence for impeachment purposes.

In July 1994, Johnson was charged with one count of sexual assault of a twelve-year-old child, in violation of § 948.02(1), STATS. The juvenile involved was a babysitter for Johnson's children. During a ride home from

baby-sitting in June 1994, Johnson allegedly assaulted the juvenile. After the preliminary hearing and bindover, the State gave notice of its intention to introduce inculpatory oral and written statements Johnson made following a polygraph examination conducted in July 1994.

Originally, the police administered a pre-polygraph interview, explaining the process to Johnson and obtaining a signed *Miranda* advisory and release form.[1] Because the police were dissatisfied with the charts and results of the partial polygraph examination due to Johnson's lack of sleep, the examination was rescheduled.

At the subsequent examination, the police reviewed Johnson's signed *Miranda* waiver with him and conducted a complete polygraph test. Shortly thereafter, the police officer escorted Johnson to an office adjacent to the polygraph lab and questioned Johnson's truthfulness as to the incident. The officer asked Johnson if he were sorry for what happened. He then asked Johnson to write a letter of apology. After eliciting the letter of apology, the officer asked Johnson what happened that night, and Johnson made the inculpatory admissions.

At the time of the polygraph, Johnson had not yet been charged with the sexual assault. According to testimony at the hearing, Johnson had come voluntarily to take the examination. The trial court found beyond a reasonable doubt that the statements were made voluntarily. On appeal, the voluntariness of Johnson's statements is not disputed. Further, the court concluded that even though Johnson was not in custody,

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966) (prophylactic rules permitting accused the exercise of the privilege against self-incrimination).

he had been advised of his *Miranda* rights and waived them as to the post-polygraph statements. Thus, the court concluded that the statements were admissible under *Miranda*.

However, the court questioned the admissibility of the statements during the State's case-in-chief. Relying on *State v. Pickett*, 150 Wis. 2d 720, 442 N.W.2d 509 (Ct. App. 1989), the court concluded that the statements would be admissible only for impeachment purposes. The State appeals the portion of the trial court's pre-trial order excluding Johnson's statements from evidence during the State's case-in-chief.

In general, we will uphold the trial court's factual findings unless they are clearly erroneous. *State v. Turner*, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827, 832 (1987). Establishing the circumstances surrounding the making of statements entails the findings of evidentiary and constitutional facts. *State v. Woods*, 117 Wis. 2d 701, 715-16, 345 N.W.2d 457, 465 (1984). The application of constitutional principles to the evidentiary and historical facts is a question of law that we review independently of the trial court's determinations. *Turner*, 136 Wis. 2d at 344, 401 N.W.2d at 832.

The State contends that Johnson's statements made after the polygraph examination are admissible because they are voluntary non-custodial statements. We agree. Further, we conclude that the post-polygraph interview was distinct in both time and content from the mechanical polygraph examination and, therefore, the general rules of admissibility apply to Johnson's inculpatory admissions.

The first step is to distinguish the law governing polygraph test results and post-polygraph admissions.

Here, statements made after the mechanical portion of the polygraph examination are at issue. Therefore, we look to precedent that controls defendants' admissions in the context surrounding polygraph examinations, not the polygraph evidence per se.

Although polygraph test results are inadmissible in criminal proceedings, *State v. Dean,* 103 Wis. 2d 228, 279, 307 N.W.2d 628, 653 (1981),[2] statements made in post-polygraph interviews may be admissible. *Barrera v. State,* 99 Wis. 2d 269, 288-89, 298 N.W.2d 820, 829 (1980). If the post-polygraph interview is so closely related to the mechanical portion of the polygraph examination that it is considered one event, the post-polygraph statements are inadmissible. *State v. Schlise,* 86 Wis. 2d 26, 43-44, 271 N.W.2d 619, 627 (1978).[3] On the other hand, post-polygraph interviews may be found to be distinct both as to time and content from the examination which precedes them, and the statements made therein admissible. *Id.* at 42, 271 N.W.2d at 626. This determination is made after consideration of the totality of circumstances of the

[2] In *State v. Dean,* 103 Wis. 2d 228, 278-79, 307 N.W.2d 628, 653 (1981), our supreme court concluded that the conditions set forth in *State v. Stanislawski,* 62 Wis. 2d 730, 216 N.W.2d 8 (1974), did not satisfactorily enhance the reliability of polygraph testing and consequently overruled *Stanislawski,* concluding that polygraph test results are completely inadmissible in criminal proceedings.

[3] Although *State v. Schlise,* 86 Wis. 2d 26, 271 N.W.2d 619 (1978), predates *State v. Dean,* 103 Wis. 2d 228, 307 N.W.2d 628 (1981), its reasoning is controlling because its analysis was predicated on the lack of a *Stanislawski* stipulation. Here, our analysis is premised on the general rule of the inadmissibility of polygraph evidence, essentially the same situation as *Schlise.*

individual case. *Barrera,* 99 Wis. 2d at 288, 298 N.W.2d at 828-29.

Here, we conclude that the actual polygraph examination and the subsequent interview were sufficiently separate events as to both time and content. Johnson's inculpatory statements were made after the completion of the actual mechanical polygraph portion of the examination while he was not attached to the mechanical polygraph apparatus. Additionally, the post-polygraph examination took place in an adjacent room. From the hearing testimony, it is evident that the police officer questioning Johnson after the polygraph examination did not refer to polygraph charts or tell Johnson he had failed the polygraph test to elicit inculpatory statements. Although the post-polygraph interview was temporally proximate to the actual test, neither *Barrera* nor *Schlise* proscribe a bright-line rule of timing, but look to the totality of the circumstances. *See Barrera,* 99 Wis. 2d at 288, 298 N.W.2d at 828-29. We conclude that where there is a distinct break between the two events and the post-polygraph interview does not specifically relate back to the actual mechanical polygraph test, the events are sufficiently attenuated; therefore, general rules of admissibility apply to the post-polygraph interview.

Further, we distinguish *Pickett* upon which the trial court relied for the proposition that post-polygraph interview admissions were admissible *only* for impeachment purposes. In *Pickett,* the sole polygraph issue was whether the post-polygraph statements could be used for impeaching the defendant's credibility. *Id.* at 724, 442 N.W.2d at 511-12. The question of post-polygraph statements' use in the State's case-in-chief was not at issue. The facts in *Pickett* indicate that after the defendant's testimony on direct examination

had been rebutted, the trial court gave the appropriate limiting instructions to the jury. *Id.* at 726, 442 N.W.2d at 512. The legal analysis we employed was governed by *Harris v. New York,* 401 U.S. 222 (1971), on the issue of compelled statements used for impeachment purposes.

Here, the State wants to use Johnson's statements in its case-in-chief. Hence, *Schlise* is controlling. Because we conclude that the post-polygraph interview was distinct in time and content, Johnson's statements are governed by the usual rules of admissibility of confessions. *See Dean,* 103 Wis. 2d at 258-59, 307 N.W.2d at 643. Because the voluntariness of Johnson's statements is not disputed and the statements are separate from the polygraph examination, we conclude the statements are admissible in the State's case-in-chief.

*By the Court.*—Order affirmed in part and reversed in part.