# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 16, 2003 Session

## STATE OF TENNESSEE v. BENJAMIN DAMRON

### Appeal By Permission from the Circuit Court for Coffee County
### No. 29542     John W. Rollins, Judge

---

### No. M2003-00588-CCA-R9-CO - Filed December 29, 2003

---

This interlocutory appeal, brought by the State, seeks to answer whether a defendant's statements made during the third phase of a polygraph examination are admissible evidence. We conclude the trial court correctly suppressed the defendant's statements because the "post-instrument phase" of the polygraph examination was an integral part of the examination process and not a separate and discrete event. We affirm the judgment from the trial court.

### Tenn. R. App. P. 9; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, J., joined. DAVID G. HAYES, J., filed a dissenting opinion.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Charles M. Layne, District Attorney General; and Jason M. Ponder, Assistant District Attorney General, for the appellant, State of Tennessee.

Robert S. Peters, Winchester, Tennessee, for the appellee, Benjamin Damron.

### OPINION

This is an interlocutory appeal by the State, pursuant to Tennessee Rule of Appellate Procedure 9. The State appeals the suppression of statements made by the defendant, Benjamin Damron, on the date of the defendant's voluntary polygraph examination. The polygraph examination was administered on January 4, 1999, with the approval of the defendant's then attorney. The defendant was indicted on January 11, 1999, for rape of a child, in contravention of Tennessee Code Annotated section 39-13-522.

On the day of and before the polygraph examination, the defendant's former attorney and the District Attorney General had a brief phone conversation concerning the examination. Both individuals testified at the suppression hearing. The defendant's attorney stated his sole purpose in allowing his client to be examined was with the hope he would pass the test and avoid a criminal

prosecution. The defendant's attorney did not discuss the details of questioning with the District Attorney General but testified there was a "tacit, absolute understanding" there were to be no questions asked beyond the test itself.

The District Attorney General testified that he confirmed to the defendant's attorney that no results of the test would be admitted into evidence, but no commitment was made as to statements made outside the actual taking of the test.

The defendant was unaccompanied by his attorney at the examination. Prior to the questioning, the defendant signed a "Consent to Polygraph Examination" and a Miranda warning titled "Tennessee Bureau of Investigation Warnings as to Constitutional Rights".

The polygraph examination was administered by a Tennessee Bureau of Investigation agent whose report was submitted into evidence. The pertinent part, with the victim's name excised, is as follows:

Detective Tildon Stubblefield, Tullahoma Police Department, Tullahoma, TN., requested a polygraph of DAMRON in connection with an on-going criminal investigation. The investigation has revealed that DAMRON was the manager of the Fun-Tunnel game room at the Northgate Mall, Tullahoma TN. [The victim] states that she frequented the Fun-Tunnel and met DAMRON. [The victim] states that on 08/29/98 [the defendant][1] took her into the office area and they engaged in consensual sexual intercourse. DAMRON has been interviewed and denied he ever took [the victim] into the office area or that he had sexual intercourse with her. DAMRON, through his legal counsel, agreed to undergo polygraph testing to prove his innocence.

Beginning at 10:00 AM on 01/04/99, DAMRON was administered a polygraph examination at the Tullahoma City Hall, Tullahoma, TN.

During the pre-instrument phase of the polygraph examination, DAMRON waived his right to legal counsel and provided written evidence he was undergoing the polygraph examination voluntarily. DAMRON made no statements contrary to those previously made by him.

Based on the polygraph examination, it was concluded that DAMRON was practicing deception when answering the relevant questions. The relevant questions utilized during this polygraph examination were the following:

Q: Did you have sex with [the victim]?
A: No.
Q: Did you have sexual intercourse with [the victim] at the Fun-Tunnel?

---

[1] The victim's name appears here in the report as an obvious typographical error.

A: No.
Q: Did you touch [the victim] with your penis?
A: No.

During the post-instrument phase of the polygraph examination DAMRON was advised of the results and initially continued to deny having sexual intercourse with [the victim]. DAMRON made the statement that if he admitted to such activity, he would lose his job with the National Guard, and that he would lose his part time job as a police officer. Also, when I stated that [the victim] had not said she had been forced to engage in the sexual intercourse, DAMRON said "she was not forced". DAMRON departed the office to meet with his legal counsel.

The examination was terminated at 12:45 PM, on 01/04/99.

The suppression hearing consisted entirely of testimony by the defendant's former attorney and the District Attorney General, the polygraph examination report, and arguments of counsel. At the conclusion, the trial court held as follows:

> Well, it looks to me like to a great extent, this is a case of first impression in Tennessee. General, I think you are right. I think it boils down, and the essence of it is, what was the agreement between defense counsel and the attorney general? I think it's generally understood, and I don't know if I can take judicial knowledge of it, the results of any polygraph test in Tennessee are not admissible for any purpose in court. Can you distinguish the results of the test from the process of the test? I don't know the answer to that, but I don't think General Layne misled Mr. Fraley, and I don't think Mr. Fraley misled General Layne, but what I do think here is there was a lack of communication about what was expected and what the results might be, and I don't think that there was a clear understanding about exactly what was going to transpire. Where does that leave us? Frankly, I think it leaves us at the point where I don't think that those responses under the circumstances are admissible. I agree with your argument about the Sixth Amendment. It was not custodial. I think you are right about that, and my brothers and sisters who grade my papers may have a different attitude about it if this gets to Nashville, but I'm going to rule it is inadmissible.

## Analysis

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). Absent a showing by the appellant that the evidence

preponderates against the judgment of the trial court, this Court must defer to the ruling of the trial court.  State v. Cribbs, 967 S.W.2d 773, 795 (Tenn.1998).

Due to a lack of scientific consensus of the reliability of polygraph evidence, most states maintain *per se* rules excluding the results.  United States v. Scheffer, 523 U.S. 303, 310-11, 118 S. Ct. 1261, 1265-66, 140 L. Ed. 413 (1998).  The precedent in Tennessee is longstanding regarding polygraph  results being inherently unreliable and, thus, inadmissible.  See State v. Hartman, 42 S.W.3d 44, 60 (Tenn. 2001); Grant v. State, 213 Tenn. 440, 443, 374 S.W.2d 391, 392 (1964); Irick v. State, 973 S.W.2d 643, 652-53 (Tenn. Crim. App. 1998); State v. Campbell, 904 S.W.2d 608, 614 (Tenn. Crim. App. 1995); State v. Adkins, 710 S.W.2d 525, 529 n.17 (Tenn. Crim. App. 1985).  The ban on admissibility is not limited to the test results, but extends to the circumstances surrounding the taking or not taking a polygraph examination.  Hembree v. State, 546 S.W.2d 235, 240 (Tenn. Crim. App. 1976); Grant, 213 Tenn. at 443, 374 S.W.2d at 392.

As noted before, the suppression hearing was devoted almost entirely to the issue of the agreement, or lack thereof, of the ground rules concerning the polygraph examination by the respective attorneys.  The trial court could not discern a meeting of the minds but did consider the examination as a continuous process.  Based on the authorities cited above, the results of the polygraph examination would be inadmissible regardless of the expectations of the respective attorneys.  The trial judge's findings can be fairly read to mean that he considered the inculpatory statements as a part of the test and thus ruled them inadmissible.  We agree.

The polygraph examiner did not testify at the suppression hearing, but the report he prepared was admitted into evidence.  From the report we discern there are three phases to a polygraph examination: the pre-instrument phase, the instrument phase, and the post-instrument phase.

The  report indicates that the examination began at 10:00 a.m.  During the "pre-instrument phase," the defendant signed a Warnings as to Constitutional Rights waiver at 10:08 a.m.  The Consent to Polygraph Examination was signed by the defendant at 10:12 a.m.

During the instrument phase, the defendant answered three questions posed by the examiner that the examiner deemed relevant.  In his answers, the defendant denied any improper contact with the victim.

The inculpatory statements were made during what the examiner referred to as the "post-instrument phase of the polygraph examination."  There is no verbatim transcript of this phase, but from the examiner's report, it appears that the statements made by the defendant were in response to statements by the examiner.  The report then states, "The examination was terminated at 12:45 p.m., on 1/04/99."  The examiner's report indicates that the polygraph examination consisted of three phases and that any statements made by the defendant were during the third phase of the examination.

Both the State and the defendant rely on <u>State v. Greer</u>, 666 N.W.2d 518 (Wis. Ct. App. 2003), in support of their positions. The Court therein examines the factors determining admissibility of statements made after a polygraph examination. The Court reasons that for admissibility, the post-exam statement must be a separate and discrete event from the examination although no time separation is required. However, the core factors are whether the test is over and <u>whether</u> <u>the</u> <u>defendant</u> <u>was</u> <u>so</u> <u>told</u>. <u>Id.</u> at 522. (emphasis added)

After careful review, we conclude that the trial court correctly suppressed the statements made by the defendant. In this instance there was no separation as to mark a discrete event, other than possibly the disconnection from the machine, of the machine phase from the post-instrument phase which caused the defendant to make the inculpatory statements. It was one event and, therefore, part of the polygraph examination itself.

Accordingly, we affirm the judgment from the trial court.


_____
JOHN EVERETT WILLIAMS, JUDGE