**STATE of Tennessee**

v.

**Benjamin DAMRON.**

Supreme Court of Tennessee, at Nashville.

Oct. 8, 2004 Session.

Heard at Franklin.[1]

Nov. 23, 2004.

since the program began in October 1995. To date, over 300 schools and more than 14,000 students have participated in S.C.A.L.E.S. projects across the State.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Senior Counsel; Charles M. Layne, District Attorney General; and Jason M. Ponder, Assistant District Attorney General, for the appellant, State of Tennessee.

Robert S. Peters, Winchester, Tennessee, for the appellee, Benjamin Damron.

## OPINION

FRANK F. DROWOTA III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, JANICE M. HOLDER, WILLIAM M. BARKER, JJ., and ALLEN WILSON WALLACE, Sp. J., joined.

We granted the State's application for permission to appeal to determine whether the trial court and the Court of Criminal Appeals erred by suppressing potentially incriminating statements given by the defendant during the post-instrument phase of a polygraph test. Upon due consideration, we conclude that the lower courts erred by suppressing the statements. Although polygraph test results, testimony concerning such test results, and offers or refusals to submit to polygraph tests are not admissible into evidence, voluntary statements made before, during, or after a polygraph test may be admitted into evidence, provided that the statements also are consistent with other applicable constitutional and evidentiary rules. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

The defendant, Benjamin Damron, was accused of raping a twelve-year-old girl at the Fun–Tunnel Game Room in Tullahoma where the defendant worked. Both a civil suit and a criminal investigation resulted from this allegation. Before the case was presented to the Coffee County Grand Jury, counsel[2] for the defendant approached the district attorney general to discuss whether a criminal prosecution could be avoided. The district attorney general agreed not only to allow the defendant to submit to a polygraph test but also to consider the results of the polygraph test before presenting the case to the Grand Jury.

The polygraph test was administered at 10 a.m. on January 4, 1999, at the Tullahoma City Hall. Although the defendant had an attorney and had discussed the polygraph test with his attorney, the defendant attended the polygraph test without counsel. The record reflects that the polygraph test consisted of three phases, the pre-instrument phase, the instrument or machine phase, and the post-instrument phase. During the pre-instrument phase of the polygraph test, the defendant signed a document entitled "Consent to Poly-

---

**2.** References in this opinion to "counsel" or to "defense counsel" refer to the attorney who initially represented the defendant and not to Mr. Peters who ultimately represented the defendant in the trial court and on appeal.

graph Examination" which provided in pertinent part:

> I understand that I am voluntarily consenting to this polygraph examination; that I have the right to refuse to take the examination; that I have the right to refuse to answer any questions; that I have the right to consult with an attorney before taking the examination; that any statements I make may be used against me in court; and that I may terminate the examination at any time. All test questions will be reviewed with me before the examination.
>
> I understand that after review of the examination, I will be advised of the results and, if necessary allowed to explain any questionable responses which were evident.

The defendant also received *Miranda*[3] warnings and executed a written waiver of his constitutional rights. This waiver provided:

> I have read, or have had read to me, my constitutional rights. I understand what my rights are, and I am willing to make

a statement and answer questions without a lawyer being present.

The examiner also reviewed with the defendant during the pre-instrument phase the questions that would be posed during the instrument phase of the test. The defendant made no incriminating statements during this portion of the polygraph test.

During the instrument phase of the polygraph test, the defendant was connected to the polygraph machine and questioned about the allegation of sexual misconduct. The defendant denied having sexual contact with the alleged victim.

After the polygraph machine had been disconnected, the post-instrument phase of the polygraph test began. The polygraph examiner advised the defendant that the polygraph test indicated the defendant had answered untruthfully three questions regarding the alleged rape.[4] Initially, the defendant continued to deny having sexual intercourse or sexual contact with the alleged victim.[5] The defen-

---

**3.** In *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that when an individual is taken into custody and is subjected to questioning, the individual must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

**4.** The three questions to which the examiner referred and to which the defendant had responded "no" were:

> Did you have sex with [the alleged victim]?
> Did you have sexual intercourse with [the alleged victim] at the Fun–Tunnel?
> Did you touch [the alleged victim] with your penis?

**5.** The polygraph examiner did not testify at the suppression hearing, but the examiner's report was admitted into evidence and provides in pertinent part:

> During the pre-instrument phase of the polygraph examination, DAMRON waived his right to legal counsel and provided written evidence he was undergoing the polygraph examination voluntarily. DAMRON made no statements contrary to those previously made by him.
>
> \* \* \* \*
>
> During the post-instrument phase of the polygraph examination DAMRON was ad-

dant then commented that if he admitted to such conduct, he would lose his job with the National Guard and his part-time job as a police officer. When the examiner stated that the alleged victim had not claimed she had been forced to engage in sexual intercourse, the defendant replied, "She was not forced."

Thereafter, the district attorney general presented the case to the Coffee County Grand Jury, and the Grand Jury returned an indictment charging the defendant with rape of a child.[6] Prior to trial, the defendant filed a motion to suppress his statements. In support of his motion, the defendant argued that his statements were inadmissible because they were part of the polygraph test. The defendant also argued that defense counsel and the district attorney general had agreed that statements made during the polygraph test would not be admissible.

At a hearing on the motion, defense counsel[7] and the district attorney general testified concerning the alleged agreement. Defense counsel had spoken with the district attorney general by telephone for approximately fifteen minutes before the defendant arrived for the polygraph test. During this conversation, defense counsel confirmed that the polygraph test *results* would be inadmissible. Although defense counsel admitted that they did not discuss the admissibility of *statements* made before, during, or after the polygraph test, defense counsel maintained that he and the district attorney general had a "tacit" agreement that such statements also would be inadmissible.

Although the district attorney general recalled his telephone discussion with defense counsel concerning the inadmissibility of the polygraph test results, the district attorney general testified that he considered the discussion unnecessary because polygraph test results had never been admissible in Tennessee. As to the inadmissibility of statements by the defendant, the district attorney general denied that any agreement existed, tacit or otherwise. The district attorney general testified that he had never agreed to exclude statements made during any phase of a polygraph examination and that he did not agree to exclude such statements in this case.

The trial court found that neither defense counsel nor the district attorney general had intentionally deceived or misled the other. The trial court found instead "a lack of communication about what was expected and what the results might be" and no "clear understanding about exactly what was going to transpire" during the polygraph examination. The trial court also concluded that the defendant had not been in a "custodial" setting when he made the statements. Nonetheless, the trial court suppressed the statements commenting, "I don't think that those responses under the circumstances are admissible."

The State sought and obtained permission to pursue an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. In a two-to-one de-

---

vised of the results and initially continued to deny having sexual intercourse with [the alleged victim]. DAMRON made the statement that if he admitted to such activity, he would lose his job with the National Guard, and that he would lose his part time job as a police officer. Also, when I stated that [the alleged victim] had not said she had been forced to engage in sexual intercourse,

DAMRON said "she was not forced[.]" DAMRON departed the office to meet with his legal counsel.
The examination was terminated at 12:45 PM, on 01/04/99[.]

6. Tenn.Code Ann. § 39–13–522.

7. See footnote 2, *supra.*

cision, the Court of Criminal Appeals affirmed the trial court's judgment suppressing the defendant's statements. The majority concluded that the statements were inadmissible because the post-instrument phase interview was part of the polygraph test, explaining that "there was no separation as to mark a discrete event, other than possibly the disconnection from the machine, of the machine phase from the post-instrument phase which caused the defendant to make the inculpatory statements." Thereafter, this Court granted the State's application for permission to appeal. We now reverse the Court of Criminal Appeals and remand to the trial court for further proceedings.

## II. *Standard of Review*

A trial court's findings of fact in a suppression hearing will be upheld on appeal unless the evidence preponderates against those findings. *State v. Munn,* 56 S.W.3d 486, 493 (Tenn.2001). Witness credibility, the weight and value of evidence, and conflicts in the evidence are matters for the trial court to decide, with the prevailing party entitled on appeal to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn from the evidence. *Id.* This Court reviews de novo a trial court's application of law to the facts. *State v. Walton,* 41 S.W.3d 75, 81 (Tenn.2001).

## III. *Admissibility of Statements*

In this Court, the State contends that the lower courts erred by suppressing the defendant's potentially incriminating statements made during the post-instrument phase of his polygraph test. The State concedes that polygraph evidence is inadmissible. The State acknowledges that polygraph evidence includes polygraph test results, testimony concerning

polygraph test results, and offers or refusals to submit to polygraph tests. Nonetheless, the State contends that *voluntary statements* made during the course of a polygraph test should be admissible to the extent allowed by applicable constitutional and evidentiary rules. The State argues that the defendant's statements were voluntary and were obtained consistent with the Fifth Amendment to the United States Constitution. Furthermore, the State asserts that the evidence does not preponderate against the trial court's finding that the defense counsel and the district attorney general had not agreed to exclude such statements.

The defendant contends that the lower courts correctly suppressed the statements because defense counsel had a "tacit, absolute understanding" with the district attorney general that such statements would not be admissible. The defendant also argues that his statements are inadmissible because they were made during the post-instrument phase of the polygraph test. Finally, the defendant argues that the Court of Criminal Appeals properly applied *State v. Greer,* 265 Wis.2d 463, 666 N.W.2d 518 (2003), and he urges this Court to hold, consistent with *Greer,* that statements made during a polygraph test are inadmissible unless the statements and the polygraph test are separate and discrete events.

Tennessee courts have held repeatedly that polygraph test results, testimony concerning such results, and testimony concerning a defendant's willingness or refusal to submit to a polygraph test are inadmissible. *State v. Pierce,* 138 S.W.3d 820, 826 (Tenn.2004) (citing cases). This general rule stems from relevancy and reliability concerns. Tennessee Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Because polygraph evidence is not consid-

ered reliable, it is irrelevant. *Pierce*, 138 S.W.3d at 826. Therefore, polygraph evidence, which includes polygraph test results, testimony concerning such results, and testimony concerning a defendant's willingness or refusal to submit to a polygraph test, is not admissible.[8] *Id.; see also State v. Torres*, 82 S.W.3d 236, 252 n. 21 (Tenn.2002); *State v. Hartman*, 42 S.W.3d 44, 60 (Tenn.2001); *State v. Irick*, 762 S.W.2d 121, 127 (Tenn.1988); *Grant v. State*, 213 Tenn. 440, 374 S.W.2d 391, 392 (1964); *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 458 (1958); *State v. Campbell*, 904 S.W.2d 608, 614–15 (Tenn.Crim. App.1995) (citing additional cases).

Although Tennessee courts have often considered the admissibility of polygraph evidence, nearly forty years have passed since Tennessee courts have considered the admissibility of statements made during polygraph tests. In *State ex rel. Weston v. Henderson*, 220 Tenn. 1, 413 S.W.2d 674 (1967), Weston submitted voluntarily to a polygraph test concerning the robbery and murder of a taxi cab driver. Weston was cleared of any crime involving the taxi driver, but during the course of the polygraph test, Weston was questioned about other unrelated crimes, confessed to those crimes, and was convicted based upon this confession. In a habeas corpus proceeding, Weston challenged his convictions, arguing that the confession upon which they were based had been illegally obtained through the use of a polygraph test. In analyzing Weston's claim, this Court recited the "well established" general rule that "the use of a lie detector in the process of interrogation does not render a subse-

quent confession involuntary or inadmissible." *Id.* at 675. Ultimately this Court rejected Weston's claim, stating:

Petitioner does not claim the results of this polygraph test were introduced in evidence against him nor that his confession was other than freely and voluntarily given; but that, in some manner, this test coerced him into giving the confession. It may well be the results of the test, which must have been apparent to petitioner, influenced him to give the confession; but, since the results of such tests are not admissible in evidence, then what the officers might have found or learned from the test would not amount to inducing or coercing petitioner to sign a confession.

*Id.*

The "well established rule" referenced in *Weston* permitting the introduction of voluntary statements made during a polygraph test remains the majority rule in the United States. Statements are not inadmissible merely because they were made during the course of a polygraph examination. Joel E. Smith, Annotation, *Admissibility in Evidence of Confession made by Accused in Anticipation of, During, or Following Polygraph Examination*, 89 A.L.R.3d 230, § 2[a] (1979 & 2004 Supp.) (collecting cases). A defendant's challenge to the admissibility of a statement made during a polygraph test will be unsuccessful unless the defendant can show that the statement was involuntary. *Id.* Voluntary statements made during the course of a polygraph test are admissible so long as they are consistent with other applicable constitutional and evidentiary rules. *Id.*

8. The defendant relies upon *Hembree v. State*, 546 S.W.2d 235 (Tenn.Crim.App.1976), to support his argument that statements made during polygraph tests are not admissible. The defendant points to language in *Hembree* which indicates that not only polygraph test results but also the circumstances surround-

ing polygraph tests are inadmissible. A careful reading of the case reveals that the "circumstances" to which the court in *Hembree* referred were offers or refusals to take polygraph tests, not statements made during polygraph tests. The defendant's reliance upon *Hembree* is misplaced. *Id.* at 240.

 Valid reasons support admitting into evidence voluntary statements made during the course of a polygraph test. As the United States Supreme Court has recognized, "admissions of guilt by wrongdoers, if not coerced, are inherently desirable." *Oregon v. Elstad,* 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Furthermore, the fact that a polygraph test is not sufficiently reliable to warrant admission of its results does not undermine the reliability of voluntary statements made by a defendant during a polygraph test. *People v. Ray,* 431 Mich. 260, 430 N.W.2d 626, 628 (1988). Indeed, as the Michigan Supreme Court correctly explained:

> The reliability of statements made during a polygraph examination does not depend on the validity of the polygraph test or the examiner's skill in conducting the test or interpreting its results, nor does the use of such statements improperly denigrate effective cross-examination. [A] statement may be reliable and voluntary even though it was made during the course of a polygraph examination.

*Id.* at 629. The Montana Supreme Court similarly explained that equating test results with statements made during the polygraph test is a mistake because "[t]he results of a polygraph examination involve the test-giver's evaluation of responses" while "[s]tatements involve direct responses to questioning and not the evaluation of the credibility in responding." *State v. Smith,* 220 Mont. 364, 715 P.2d 1301, 1310 (1986). The rationale and policies supporting exclusion of polygraph evidence do not support exclusion of voluntary, non-coerced statements made during a polygraph test. Consistent with *Weston* and the overwhelming majority of jurisdictions that have considered this issue, we hold that statements made during the course of a polygraph test are not excludable per se

as evidence at trial. Current procedures for testing the voluntariness of such statements are adequate to insure that an unreliable statement or a statement obtained without a knowing and intelligent waiver of a defendant's rights will not be admissible at trial. If a statement is voluntary and consistent with other applicable constitutional and evidentiary rules, the statement can be introduced into evidence. In so holding, we reject the analysis of *State v. Greer,* 265 Wis.2d 463, 666 N.W.2d 518 (2003), which was adopted by the Court of Criminal Appeals. Under the analysis of *Greer,* an otherwise voluntary statement would be inadmissible unless the statement was separate and discrete from the polygraph test. For the reasons previously explained, by definition, voluntary statements are separate and discrete from polygraph tests. In our view, voluntariness is the proper test for determining the admissibility of such statements.

 Returning to the facts of this case, we conclude that the lower courts erred by granting the defendant's motion to suppress. The pertinent question for a court determining voluntariness is whether, considering the totality of the circumstances, the statement resulted from coercion and overreaching by law enforcement officers sufficient to overcome the defendant's free will. *State v. Smith,* 933 S.W.2d 450, 455–56 (Tenn.1996); *State v. Kelly,* 603 S.W.2d 726, 728 (Tenn.1980). The record in this case contains no evidence of coercion or overreaching. The defendant signed a consent form prior to submitting to the polygraph test. This form advised the defendant in clear and succinct language that any statements he made could be used against him in court, that he would be provided the results of the polygraph test, and that he would be allowed to explain any questionable responses. In addition, the polygraph examiner provided the de-

**518**

fendant *Miranda* warnings, and the defendant executed a written waiver of his constitutional rights.

The polygraph test was administered as it had been described in the consent form. The defendant was provided the results of the test and given an opportunity to explain. When the defendant made the statements at issue in this appeal, the polygraph examiner was not interrogating the defendant. The examiner merely was affording the defendant an opportunity to explain questionable answers. Confronting a suspect with polygraph results ordinarily is not coercive or unreasonable. *Wyrick v. Fields*, 459 U.S. 42, 48, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). Doing so in this case certainly was not coercive or unreasonable because the defendant had been told before the test began that he would be advised of the results and that he would be allowed to explain questionable responses. The evidence in the record simply does not establish, nor even suggest, that the potentially incriminating statements resulted from police coercion or overreaching, rather than the defendant's free will.

Finally, despite the defendant's assertions, the evidence does not preponderate against the trial court's finding that defense counsel and the district attorney general had not agreed to exclude any statements made during the course of the polygraph test. Indeed, the testimony in the record fully supports the trial court's finding that the prosecution and the defense had no agreement as to the admissibility of statements made during the polygraph test. Accordingly, we hold that the defendant's voluntary statements may be admitted into evidence, provided that the statements also are consistent with other applicable constitutional and evidentiary rules, even though these statements were made during the post-instrument phase of the polygraph test. The prosecution may not introduce evidence concerning the polygraph test results or evidence indicating that the defendant's statements were provided during a polygraph test. Such evidence is inadmissible.

## IV. *Conclusion*

Based upon the foregoing analysis, we reverse the judgments of the trial court and the Court of Criminal Appeals. This case is remanded to the trial court for further proceedings consistent with this decision. Costs of this appeal are taxed to the defendant, Benjamin Damron, for which execution may issue if necessary.