In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1695

JIMMIE JOHNSON,

*Petitioner-Appellant*,

*v.*

WILLIAM POLLARD, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:06-cv-00357-AEG—**Aaron E. Goodstein**, *Magistrate Judge*.

ARGUED OCTOBER 30, 2008—DECIDED MARCH 24, 2009

Before EASTERBROOK, *Chief Judge*, and RIPPLE and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Jimmie Johnson was convicted in Wisconsin state court of reckless homicide, recklessly endangering safety and being a felon in possession of a firearm. The trial court admitted into evidence Mr. Johnson's confession. Mr. Johnson claims that this confession was the product of police coercion and, consequently, was inadmissible at trial. After unsuccessfully seeking

relief in the Wisconsin courts, Mr. Johnson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied his petition and later denied his request for a certificate of appealability. We granted a certificate of appealability on the issue of whether Mr. Johnson's confession was voluntary. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

On September 20, 2000, two men were fatally injured and three individuals were wounded when a gunman opened fire outside a Milwaukee tavern. Mr. Johnson was implicated in the shootings, and police arrested him on unrelated charges in the early morning hours of October 2, 2000. The police interviewed Mr. Johnson on multiple occasions following his arrest.[1] Mr. Johnson initially denied

---

[1] The parties dispute the number of the interviews and the time period over which they occurred. Mr. Johnson claims he was interviewed five times between October 2 and October 4. Elsewhere in the record, he indicated that he was interviewed six times in five days. Our review of the evidence presented at the hearing on Mr. Johnson's motion to suppress his confession suggests that Mr. Johnson participated in two interviews on October 2, submitted to a polygraph examination on the morning of October 3 and confessed to his involvement in the shootings in an interview following the polygraph examination on October 3.

(continued...)

1 (...continued)

Specifically, the record suggests that Mr. Johnson was arrested on October 2, 2000, at 4:25 a.m. R.35 at 12. At that time, he was not considered a suspect in the shootings, but he had been identified as a potential witness. *Id.* at 14-15. Two detectives questioned Mr. Johnson about the shootings from approximately 6:00 a.m. until approximately 8:00 a.m. on the day of his arrest. *Id.* at 15. Mr. Johnson was not informed of his *Miranda* rights during that interview. *Id.* at 14. Later that evening, Mr. Johnson requested a second interview. *Id.* at 42. Mr. Johnson was informed of his *Miranda* rights at the beginning of that interview. *Id.* at 36-38. During the interview, which lasted from approximately 9:00 p.m. until 2:47 a.m., the interrogating officers allowed Mr. Johnson to take six breaks. *Id.* at 34, 44, 47.

On October 3, Mr. Johnson submitted to a polygraph examination. *Id.* at 86. The examination lasted from approximately 11:15 a.m. until 2:58 p.m. *Id.* at 87, 98. At the beginning of the examination, Mr. Johnson was informed of his *Miranda* rights and specifically acknowledged that he was aware that he could call an attorney at any point during the examination. *Id.* at 90-94. At the conclusion of the examination, Mr. Johnson was advised that the test was complete and was moved to another room. *Id.* at 97-99.

Later that evening, Mr. Johnson was interviewed by Lieutenant Jessup and Detective Heier. The interview began at 6:24 p.m. R.36 at 28. At the beginning of the interview, Mr. Johnson again was informed of his *Miranda* rights. *Id.* at 25-26. Shortly after the interview began, Mr. Johnson admitted that his earlier statements were false and confessed to firing a gun into the crowd on the night in question. *Id.* at 33-35, 46-49. At approximately 7:00 p.m., after he admitted to firing a weapon, Mr. Johnson was placed under arrest for homicide. *Id.* at 35. Lieuten-

(continued...)

any involvement in the shootings and agreed to take a polygraph test, which was administered on October 3, 2000. At the conclusion of the test, Mr. Johnson signed a statement indicating the following: (1) he knowingly and intelligently had waived his rights during the examination; (2) his statements during the examination were made willingly; and (3) he understood that the examination was over and that any questions that the police might ask and any answers that he might give from that point forward would not be part of the polygraph examination.

Approximately three hours after the examination concluded, Mr. Johnson was read his *Miranda* rights and interviewed by the police. During the interview, Detective Heier made the following statement: "It's my understanding you must have failed that polygraph because you're still here."[2] R.37 at 34. The officers made no other remarks about the results of the polygraph examination.

---

[1] (...continued)
ant Jessup indicated that, throughout the interview, Mr. Johnson appeared cooperative and willing to discuss his involvement in the incident. *Id.* at 25. Lieutenant Jessup also stated that Mr. Johnson never appeared reluctant to answer questions. *Id.* at 30-31. During the interview, Mr. Johnson was permitted to use the restroom and was given a cheeseburger, french fries and a soda. *Id.* at 30-32. The interview ended at 9:08 p.m. *Id.* at 41.

[2] The record suggests that Mr. Johnson failed the polygraph examination. However, the parties dispute whether Detective Heier had actual knowledge of the results of the examination at the time he made the statement.

Following the statement by Detective Heier, Mr. Johnson's demeanor changed, and he confessed to his involvement in the shooting. He subsequently was convicted by a Milwaukee County jury of two counts of reckless homicide, three counts of recklessly endangering safety and one count of being a felon in possession of a firearm.

Mr. Johnson appealed his conviction to the Court of Appeals of Wisconsin, claiming that his "confession was coerced in violation of the Fifth Amendment when City of Milwaukee police detectives overcame [his] will by use of the polygraph examination process." R.6, Ex. I at 43. Despite framing the issue on appeal in federal constitutional terms, Mr. Johnson's brief neither relied upon federal case law discussing the Fifth Amendment nor specifically referenced those portions of Wisconsin cases that addressed the voluntariness issue in terms of federal constitutional law;[3] the primary conten-

---

[3] The only federal case cited by Mr. Johnson was *Watts v. Indiana*, 338 U.S. 49, 51 (1949) (plurality opinion), which he relied on for the proposition that, although federal courts ordinarily should hesitate before overturning a state court's finding of fact, they may independently determine the constitutional import of those facts. He then stated that the Court of Appeals of Wisconsin reviews the trial court's factual findings for clear error, and its constitutional findings de novo. R.6, Ex. I at 43-44.

In his analysis, Mr. Johnson cited six Wisconsin cases: *State v. Dean*, 307 N.W.2d 628 (Wis. 1981) (cited for the proposition that polygraph tests are inadmissible in criminal proceedings, R.6, Ex. I at 44); *State v. Schlise*, 271 N.W.2d 619 (Wis. 1978) (cited

(continued...)

---

[3] (...continued)

for the proposition that post-polygraph statements may be admissible if totally discrete from the preceding polygraph examination, R.6, Ex. I at 44); *State v. Johnson*, 535 N.W.2d 441 (Wis. 1995) (utilized to set out a three-part inquiry regarding when a post-polygraph statement is considered discrete from a polygraph examination, R.6, Ex. I at 44-45); *Turner v. State*, 250 N.W.2d 706 (Wis. 1977) (noted for the proposition that the Supreme Court of Wisconsin has found a six-day interval between a polygraph examination and a subsequent statement sufficient to render the statement discrete from the polygraph, R.6, Ex. I at 45-46); *Barrera v. State*, 298 N.W.2d 820 (Wis. 1980) (referred to in support of Mr. Johnson's claim that confronting a defendant with test results could be so psychologically coercive as to require suppression, R.6, Ex. I at 46); *McAdoo v. State*, 223 N.W.2d 521 (Wis. 1974) (cited in reference to one of several factors that a court may consider in determining whether to allow the admission of a post-polygraph statement, R.6, Ex. I at 46).

Of the cases cited in Mr. Johnson's brief, two cases—*Dean*, 307 N.W.2d 628, and *Johnson*, 535 N.W.2d 441—do not discuss whether the confessions at issue were voluntary. The remaining cases do address the voluntariness issue, but their discussion of federal case law is limited. In *Turner*, 250 N.W.2d at 715-17, the Supreme Court of Wisconsin relied solely on state law in determining whether the defendant's confession was voluntary. In *Barrera*, 298 N.W.2d at 291-93, the court indirectly referenced federal law in its totality-of-the-circumstances analysis. In *Schlise*, 271 N.W.2d at 626-30, and *McAdoo*, 223 N.W.2d at 526-27, the court referred to federal case law, but primarily relied on state case law in its analyses.

(continued...)

tion in his brief was that the polygraph examination and the interview following the examination constituted a single event, and, as such, any statements made during the examination and the interview were inadmissible. The Court of Appeals of Wisconsin held that the post-

---

[3] (...continued)

Mr. Johnson argued, based on the above-cited cases, that "[t]he determination of whether a post-polygraph statement is sufficiently discrete from the polygraph examination and, thus, admissible must be made after a careful reference to . . . all of the relevant factors and the totality of the circumstances of an individual case." R.6, Ex. I at 47. He then asserted that his confession, which was made during the interview following his polygraph examination, should be suppressed. He claimed that Detective Durbis initially proposed that he take the polygraph examination. R.6, Ex. I at 48. He also stated that he "was unaware that his interview . . . on October 3, 2000 was not an extension of the polygraph process." *Id.* He further contended that Detective Heier's statement about the results of the polygraph was intended to overcome his will after two days of interrogation. *Id.* Mr. Johnson claimed that, given his naiveté and lack of education, Detective Hargrove's attempt to describe the polygraph examination process and "sanitize it from the police interrogation process" was insufficient to negate the coercive effect of Detective Heier's statements. *Id.* at 49. Therefore, he argued, because the police did not attempt to make him aware that the interrogation following the polygraph examination was not simply another phase of the examination, and because they referenced the results of the examination during that interview, the interview and the polygraph examination should be considered a single event that must be suppressed.

polygraph interview was distinct both in time and in location from the polygraph examination. The appellate court therefore affirmed Mr. Johnson's conviction, and the Supreme Court of Wisconsin denied Mr. Johnson's petition for discretionary review.

After unsuccessfully challenging his conviction on appeal, Mr. Johnson sought collateral post-conviction relief in the Wisconsin state courts. The trial court denied relief and the judgment was affirmed by the Court of Appeals of Wisconsin. The Supreme Court of Wisconsin denied review.

Mr. Johnson filed this habeas corpus petition in the United States District Court for the Eastern District of Wisconsin. The district court rejected his petition and denied his request for a certificate of appealability. We granted his request for a certificate of appealability on the question of whether his confession was involuntary.

## II

## DISCUSSION

This appeal presents two issues: First, the State contends that we are precluded from reviewing Mr. Johnson's federal constitutional claim because he did not present that claim in the state-court proceedings. Second, Mr. Johnson argues that the state court violated his Fifth Amendment rights by admitting the confession into evidence.

**A.**

The State submits that Mr. Johnson failed to present his Fifth Amendment claim to the Wisconsin courts. In its view, therefore, we are precluded from considering the merits of Mr. Johnson's petition. "Whether a party has procedurally defaulted his claim is a question of law that we review de novo." *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008) (citing *Lieberman v. Thomas*, 505 F.3d 665, 670 (7th Cir. 2007)).

Our authority to grant a petition is limited by 28 U.S.C. § 2254(b), which provides that "[a]n application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State."[4] Implicit in the exhaustion requirement is the related condition which requires petitioners to "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (alteration in original) (citations and quotation marks omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999) ("To . . . protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has exhausted state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly pre-

---

[4]   *See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . ."); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008).

sented his claims to the state courts." (citations and quotation marks omitted)); *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001). In order to satisfy this requirement, a petitioner must fairly present his federal claims at each level of the state's established review process. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (noting that "[a] state prisoner is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one complete round of the State's established appellate review process" (citations and quotation marks omitted)).[5] Failure to do so constitutes procedural default that precludes review by federal courts. *See id.* at 92 ("the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default"); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004).

However, we need not address the procedural default issue raised by the State because Mr. Johnson's claim clearly fails on the merits. *See* 28 U.S.C. § 2254(b)(2); *see, e.g.*, *Bell v. Cone*, 543 U.S. 447, 451, 451 n.3 (2005) (declining to address whether the court of appeals correctly held that the petitioner had not defaulted on his claim and citing 28 U.S.C. § 2254(b)(2) for the proposition that "an application for habeas corpus may be denied on the merits, notwithstanding a petitioner's failure to exhaust in state court"); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)

---

[5] *See also Baldwin*, 541 U.S. at 29 ("[a] prisoner must fairly present his claim in each appropriate state court" (citations and quotation marks omitted)); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

(acknowledging that a federal court may deny a petition for habeas corpus on the merits without resolving whether the issue was presented fairly to the state courts).

## B.

Mr. Johnson maintains that the admission of his confession violated his Fifth Amendment rights because the confession was involuntary. Ordinarily, our review of a habeas petition is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, which provides that habeas relief

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Here, the Court of Appeals of Wisconsin, while it did not rely explicitly on federal authority,[6]

---

[6] Citation to Supreme Court authority by a state court is not an essential ingredient of resolving a federal constitutional issue.
(continued...)

appears to have resolved the federal issue of the voluntariness of the confession on the merits. Therefore, the applicable standard of review is the one contained in section 2254(d). Under that standard,

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations and quotation marks omitted). However, we hasten to add that, if the Wisconsin court did not reach the merits of the federal claim and a de novo standard of review is appropriate, *see* 28 U.S.C. § 2243,[7] the result here would be the same.

---

[6] (...continued)
*Mitchell v. Esparza*, 540 U.S. 12, 16 (2004) (per curiam); *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

[7] Our previous opinions have equated this statutory standard with substantive de novo review, *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008), and plenary review, *see, e.g.*, *Harrison v. McBride*, 428 F.3d 652, 665, 668-70 (7th Cir. 2005) (engaging in a review of the facts surrounding the petitioner's trial and concluding that the petitioner "did not receive a trial by a judge free from bias," *id.* at 670).

A confession is involuntary when it was given in circumstances that were sufficient to overbear the confessor's free will. *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963); *see also Weidner v. Thieret*, 866 F.2d 958, 963 (7th Cir. 1989) ("Interrogation becomes constitutionally objectionable only when the circumstances prevent the person being questioned from making a rational choice."). We examine the totality of the circumstances surrounding a confession to determine whether the confession is voluntary. *Miller v. Fenton*, 474 U.S. 104, 110, 112 (1985); *see also Gilbert v. Merchant*, 488 F.3d 780, 791 (7th Cir. 2007). Therefore, we must determine whether the circumstances surrounding Mr. Johnson's confession would have interfered with his "free and deliberate choice of whether to confess." *Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992) (citations and quotation marks omitted). Applying this standard, we conclude that the record does not support a finding that Mr. Johnson's confession was the product of police coercion.

The parties disagree on both the circumstances surrounding Mr. Johnson's confession and the impact those circumstances had on Mr. Johnson's free will. Mr. Johnson contends that his confession was the involuntary product of coercive interrogation tactics. Specifically, Mr. Johnson points to two allegedly coercive tactics that, in his view, were designed to overcome his free will. First, he claims that Detective Heier taunted him by indicating that he had failed his polygraph examination. Mr. Johnson submits that, because Detective Heier was unaware of the results of the polygraph at the time, his statement could have had no purpose other than to

"humiliate [him] into inculpating himself." Appellant's Br. 19. Second, Mr. Johnson takes issue with the number of times that he was interrogated; he claims that "the repeated interrogations demonstrate[d] . . . that the police would not stop until [he] said that he was the shooter." *Id.* at 20. Mr. Johnson asserts that these two tactics, taken together, created a coercive environment, overcame his free will and caused him to give an involuntary confession.

The State submits that neither Detective Heier's statement nor the frequent interrogations were so coercive as to render Mr. Johnson's confession involuntary. It asserts that, at the time Detective Heier made the statement, he knew that Mr. Johnson had failed the polygraph test; therefore, the statement was not coercive. *See Barrera v. Young,* 794 F.2d 1264, 1266, 1270-71 (7th Cir. 1986) (concluding that the fact that a polygraph examiner accurately informed the petitioner about the results of his co-defendant's polygraph examination did not render the petitioner's confession involuntary). Furthermore, the State contends, even if Detective Heier did not know the results of the polygraph examination at the time he made the statement, the use of "deception by an interrogator does not automatically invalidate a confession." *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1251 (7th Cir. 1988). The State claims that Detective Heier's statement and the repeated interrogations, when viewed in light of the fact that Mr. Johnson repeatedly was reminded of his *Miranda* rights, were not so coercive as to compel Mr. Johnson to give an involuntary confession.

We begin our analysis by evaluating Detective Heier's allegedly coercive statement. Mr. Johnson claims that Detective Heier falsely, or at least unknowingly, told Mr. Johnson that he had failed his polygraph examination. Appellant's Br. 19. As an initial matter, we doubt that Mr. Johnson's characterization of Detective Heier's statement is correct. A fair reading of the statement—"It's my understanding you must have failed that polygraph because you're still here"—shows that the statement was not tantamount to a claim that Mr. Johnson had failed the polygraph examination. Rather, the statement reflected the detective's belief that, had Mr. Johnson passed the polygraph examination, he would have been released. Moreover, even if we were to assume that Detective Heier did not know the outcome of the polygraph examination and lied about the results to Mr. Johnson, the fact that the detective made a false or misleading statement during the course of the interrogation would not, by itself, render Mr. Johnson's confession involuntary. *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *Sotelo*, 850 F.2d at 1251. The fact that an officer misrepresents the strength of the evidence against a defendant is insufficient, standing alone, to render an otherwise voluntary confession inadmissible. *Holland*, 963 F.2d at 1051; *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997). An interrogating officer's misrepresentations are neither dispositive of nor irrelevant to the question of whether a defendant's statement was voluntary. Rather, when an interrogator makes a false statement to a defendant, we must evaluate the extent to which the misrepresentation "[overcame the defendant's] will by distorting

an otherwise rational choice." *Holland*, 963 F.2d at 1051; *see, e.g., Frazier v. Cupp*, 394 U.S. 731, 739 (1969) ("The fact that the police misrepresented the statements that [the co-defendant] had made is, while relevant, insufficient . . . to make this otherwise voluntary confession inadmissible.").

The misrepresentation at issue in this case, if it may be considered a misrepresentation at all, is not the type of false statement that would "distort[] the alternatives among which [Mr. Johnson was] being asked to choose." *Weidner*, 866 F.2d at 963. This conclusion is consistent with the holdings of the Supreme Court and our sister circuits. *See Lynumn*, 372 U.S. at 533-34 (concluding that the defendant's confession was coerced when the police implied that she would lose custody of her children and her state financial benefits if she did not cooperate); *United States v. Lopez*, 437 F.3d 1059, 1066 (10th Cir. 2006) (determining that the agents' misrepresentation of the evidence against the defendant, combined with their promise that if the defendant confessed he would be sentenced to six years' imprisonment, rather than sixty, rendered the confession involuntary); *United States v. Anderson*, 929 F.2d 96, 98, 102 (2d Cir. 1991) (holding that the agent's statement that speaking with a lawyer would permanently preclude the defendant from cooperating with police rendered the defendant's first confession involuntary). Detective Heier's statement related to the strength of the State's case; it would not have caused Mr. Johnson to "consider anything beyond his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment

regarding the . . . evidence linking him to the crime."
*Holland*, 963 F.2d at 1051. The Supreme Court, this court
and our sister circuits routinely have held that such
misrepresentations are insufficient, in and of themselves,
to render a confession involuntary. *See, e.g., Frazier*, 394
U.S. at 737, 739 (false statement that the co-defendant
had confessed); *Holland*, 963 F.2d at 1051 (false claim that
a witness had seen the defendant's vehicle at the crime
scene); *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998)
(misrepresentation regarding fingerprint evidence
found in the victim's home); *Ledbetter v. Edwards*, 35 F.3d
1062, 1066, 1070 (6th Cir. 1994) (falsified fingerprint-
comparison chart, claim that three witnesses had identi-
fied defendant, and staged victim identification). In the
absence of other elements indicating that Mr. Johnson's
will was overborne, Detective Heier's statement, even if
false, would not have rendered Mr. Johnson's con-
fession involuntary.

We now turn to Mr. Johnson's second contention: that
the frequency with which he was interrogated suggested
that the police would continue to question him until he
confessed to the shooting. When evaluating whether a
defendant's confession is voluntary, we certainly may
consider "the repeated and prolonged nature of the
questioning" to which the defendant was subjected. *Smith
v. Duckworth*, 910 F.2d 1492, 1496 (7th Cir. 1990) (citations
and quotation marks omitted). However, the frequency
with which a defendant was interrogated is only one
of several factors that we consider in our totality-of-the-
circumstances analysis. *See Gilbert*, 488 F.3d at 791 (noting
that courts may consider, among other things, the

age, experience, education, background and intelligence of the accused, the length of the questioning, and other circumstances surrounding the interrogation when evaluating whether a confession was voluntarily given).

After reviewing the record, we must conclude that, although the fact that Mr. Johnson was questioned on at least four separate occasions[8] before he confessed to the shooting certainly is relevant and probative on the issue of the voluntariness of his confession, other factors weigh against a conclusion that Mr. Johnson's confession was coerced. Mr. Johnson has not alleged that the conditions of his detention were unduly harsh; the record reflects that Mr. Johnson was offered food, beverages, cigarettes and short breaks during two of his interviews. R.35 at 47; R.36 at 30-32. The record further indicates that Mr. Johnson was informed of his *Miranda* rights at the outset of all but one of his interactions with his interrogators.[9] *Cf. Haynes v. Washington*, 373 U.S. 503, 509-11, 514 (1963) (concluding the defendant's confession was involuntary where police refused to allow him to

---

[8] For the purposes of this appeal, we consider the polygraph examination to constitute an interview.

[9] Lieutenant Dubis testified that they did not inform Mr. Johnson of his *Miranda* rights at the 6:00 a.m. interview on October 2 because Mr. Johnson was not considered a suspect at that time. R.35 at 14-15. However, Mr. Johnson was informed of his *Miranda* rights at the beginning of his second interview, the beginning of his polygraph examination and the beginning of the interview following the polygraph examination. R.35 at 37, 90-94; R.36 at 25-26.

make a phone call and did not inform him of his right to remain silent or his right to consult an attorney). Notably, one of the interviews that Mr. Johnson takes issue with—the October 2 interview that lasted from 9:00 p.m. until 2:47 a.m.—was initiated at Mr. Johnson's request. R.35 at 42; R.36 at 72. This fact, which Mr. Johnson does not address on appeal, casts some doubt on Mr. Johnson's claim that he believed that the investigators would continue to interrogate him until he confessed to the shooting.

In sum, the circumstances surrounding Mr. Johnson's confession were not so coercive as to render Mr. Johnson's confession involuntary. Although Mr. Johnson was interviewed by detectives on four separate occasions, there is no evidence that Mr. Johnson was deprived of physical necessities or prevented from taking breaks during those interrogations. Also, with the possible exception of the interview requested by Mr. Johnson, the interviews were not unduly lengthy. *See Ledbetter*, 35 F.3d at 1070 (considering the fact that the defendant "had been questioned for a reasonable amount of time" and "had been allowed the necessary creature comforts" in reaching its conclusion that the defendant's confession was voluntary); *cf. United States v. Hull*, 441 F.2d 308, 312 (7th Cir. 1971) (concluding that the defendant's confession was involuntary when he was subjected to continuous interrogations for nearly twelve hours). Furthermore, Mr. Johnson is neither too young nor too naive to comprehend the meaning of the *Miranda* warnings that repeatedly were given to him; he is an adult who willingly interacted with his interrogators. In light of these facts, we conclude that, even if Detective Heier deliberately

misrepresented the results of the polygraph examination, the circumstances surrounding Mr. Johnson's confession were not so coercive as to render the confession involuntary. *Cf. Woods v. Clusen*, 794 F.2d 293, 297 (7th Cir. 1986) (concluding that the officers "hindered [the juvenile defendant's] ability to make a knowing and voluntary choice . . . to waive his rights" by arresting the defendant in his bedroom in the early morning, stripping him of his clothes, giving him institutional clothing—but not shoes—and misrepresenting the evidence against him while making "clearly intimidating statements").

Assessing all of these facts, we cannot conclude that the statement by Detective Heier and the frequency with which Mr. Johnson was interrogated undermined Mr. Johnson's free will and induced him to tender an involuntary confession. Because the confession is not involuntary when reviewed on a de novo basis, it most certainly is not involuntary when reviewed under the deferential standard of AEDPA. Accordingly, we affirm the decision of the district court.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED