NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 3, 2010[*]
Decided March 9, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 09-1870

| | |
|---|---|
| JEFFREY D. LEISER, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 07-CV-994 |
| | |
| MICHAEL THURMER, | Aaron E. Goodstein, |
| *Respondent-Appellee*. | *Magistrate Judge*. |

**O R D E R**

Jeffrey Leiser was acquitted in Wisconsin state court of sexually assaulting his girlfriend's nine-year-old granddaughter but convicted of assaulting her eight-year-old granddaughter. After exhausting the state appellate and postconviction processes, Leiser filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in federal court. The district court denied his petition but granted him a certificate of appealability. We affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeals are submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The eight year old reported to her mother that Leiser, her grandmother's live-in boyfriend, had touched her in her private parts while she was sitting on his lap watching a movie at her grandmother's house.  The girl revealed the assault when her mother asked both her daughters whether Leiser had ever touched them.  The question was prompted by her discovery that Leiser was listed on a sex-offender registry.  Although the nine year old, unlike her sister, initially denied being touched, a few months later she told her mother that Leiser had touched her inappropriately too, also while sitting on his lap at her grandmother's house.  Leiser was charged with two counts of sexual assault.

Before trial the court prohibited the prosecution from mentioning any of the details surrounding the 1996 conviction that led to Leiser registering as a sex offender.  Leiser had been convicted of second-degree sexual assault based on a long-term sexual relationship he had begun with a 12-year-old girl whom he impregnated when she was 14.  Although the prior relationship consisted primarily of intercourse, it appears that Leiser also was sexually stimulated at least once from the girl sitting on his lap.  The prosecution wanted to use details of the prior conviction to show that Leiser intended to get sexual gratification, an element of the offense, from his alleged acts against the two girls here.  The trial court acknowledged that the evidence would be relevant for that narrow purpose, but excluded it as overly prejudicial because the other details of the crime were too dissimilar from the current charges—in particular, the age of the victims, the acts performed, and the duration of the abuse.

The trial court, however, allowed the prosecution witnesses to testify that they knew Leiser was a registered sex offender because it found that detail necessary to explain the context in which the allegations of the two assaults came to light.  Specifically, the mother questioned her daughters about inappropriate touching only because she learned Leiser was on the sex-offender registry.  Leiser's trial counsel did not object but did express concern about how the disclosure would be worded.  The trial court later instructed the jury to consider Leiser's status as a sex offender only for context and not as a basis to conclude that Leiser is a bad guy and therefore guilty.

Leiser's theory of the defense was that his girlfriend's family did not like him from the beginning, and once they learned he was a registered sex offender, they influenced the girls into believing that Leiser had assaulted them.  He did not testify, but his mother, sister, and the girls' grandmother (who by that point was his wife) testified in his defense.  His sister testified that at the time when Leiser supposedly assaulted the nine year old, she was outside with them and sitting on the bench where the girl said the incident occurred.  She said that Leiser never sat there and denied that the alleged abuse ever happened.  The girls' grandmother and Leiser's mother (who lived with Leiser and the grandmother) each

testified that they were home at the time of both alleged incidents and denied that Leiser touched the girls inappropriately.

After the jury verdict, Leiser was sentenced to 25 years' confinement followed by 20 years' extended supervision. Leiser filed a postconviction motion under § 974.02 of the Wisconsin statutes challenging his trial counsel's effectiveness for failing to object to the admission of his status as a sex offender.[1] The trial court denied the motion, and Leiser raised the issue again on direct appeal. The Wisconsin Court of Appeals found that trial counsel was not ineffective because the evidence was admissible, and the Wisconsin Supreme Court denied review.

After his conviction was final, Leiser filed another postconviction motion, this time under § 974.06, challenging other aspects of his trial counsel's performance—namely, failing to call the girls' father as a witness, failing to object to the state's closing argument, and failing to object to Leiser's absence from the court during a discussion about a question from the jury. Because Leiser was required to raise these challenges in his first postconviction petition but did not, he attempted to excuse his default by arguing that their omission was the result of postconviction counsel's ineffectiveness. *See State v. Escalona-Naranjo*, 517 N.W.2d 157, 160-61 (Wis. Ct. App. 1994); *State ex rel. Rothering v. McCaughtry*, 556 N.W.2d 136, 139-40 (Wis. App. Ct. 1996). The Wisconsin Court of Appeals, though, found that Leiser's postconviction counsel was not ineffective because Leiser's underlying challenges to his trial counsel's performance had no merit. The Wisconsin Supreme Court again denied review.

Leiser raised the same contentions in a federal habeas corpus petition. The district court likewise denied Leiser relief, concluding that the Wisconsin court had reasonably applied federal law to Leiser's claims.

On appeal Leiser persists in his claims that his trial counsel and postconviction counsel were constitutionally ineffective. This court, however, has yet to decide whether Wisconsin prisoners have a sixth amendment right to effective assistance of postconviction counsel before direct appeal. *See Huusko v. Jenkins*, 556 F.3d 633, 634-35 (7th Cir. 2009). But because we conclude that the underlying challenges to trial counsel's performance have no merit, we shall treat Leiser's challenges as ones to trial counsel's performance—challenges that the Wisconsin court analyzed in determining postconviction counsel's

---

[1]Wisconsin law provides a procedure for convicted defendants to raise instances of ineffective assistance of trial counsel before filing a direct appeal. *See* WIS. STAT. §§ 809.30(2)(h), 974.02; *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979).

effectiveness—and save for another day a foray into Wisconsin postconviction procedures. *See Northern v. Boatwright*, No. 08-3272, 2010 WL 323058, at *4-5 (7th Cir. 2010) (holding that appellate counsel was not ineffective for failing to raise weak claim of ineffective assistance of trial counsel).

A defendant has a right under the Sixth Amendment to effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We review the Wisconsin Court of Appeals's decision as the last state court to reach the merits of Leiser's petition. *McAffe v. Thurmer*, 589 F.3d 353, 354 (7th Cir. 2009). For relief Leiser must show that the Wisconsin court's decision is either (1) contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or (2) based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-06, 409-11 (2000). The state court's decision must be not only wrong but also objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009). A decision is not objectively unreasonable unless it falls "well outside the boundaries of permissible differences of opinion." *Starkweather v. Smith*, 574 F.3d 399, 402 (7th Cir. 2009) (internal quotation marks omitted) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

Leiser first argues that his trial counsel was ineffective because he did not object to the jury's hearing that he was a registered sex offender. He asserts that his sex-offender status was not necessary for context and should have been prohibited as propensity evidence. Leiser insists that if his counsel had objected, the court would have excluded the evidence for the same reasons it excluded evidence of his prior conviction. Leiser contends that the repeated references to his status as a sex offender led the jury to convict him solely on this basis and rendered his trial fundamentally unfair.

The Wisconsin Court of Appeals determined on direct appeal that Leiser's trial counsel was not ineffective for failing to object because the evidence was admissible. It noted, first, that Leiser's sex-offender status was probably not "classic other acts evidence" but rather part of the "panorama of evidence" that explained how and why the crimes were reported. But, the appellate court continued, even if Leiser's status was other-acts evidence, it was properly admitted to show the context of the girls' disclosures. The appellate court concluded that Leiser's status as a sex offender required a different evidentiary analysis than that for his prior conviction. First, evidence of the conviction and the sex-offender status had been offered for different purposes—one to show Leiser's intent to receive sexual gratification and the other to show context. Also, evidence of the conviction included details of prior sexual conduct, while evidence of Leiser's status on the registry did not. And because the jury would not know why Leiser was on the registry, the court noted that "[t]he mere fact that Leiser was a registered sex offender would not appeal to the jury's

sympathies, arouse a sense of horror, or invoke an instinct to punish." Plus, the appellate court added, the trial court gave a cautionary instruction that mitigated any prejudice. This evidence, therefore, was properly admitted.

Although the Wisconsin appellate court did not cite to *Strickland*, it applied the correct standard, namely whether "counsel's representation was deficient and prejudicial." *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that citation to federal precedent unnecessary); *Johnson v. Pollard*, 559 F.3d 746, 752 & n.6 (7th Cir. 2009) (same). Therefore, we examine whether the Wisconsin court unreasonably determined that Leiser was not prejudiced because the evidence would have been admitted over an objection. When evidence is admissible, counsel is not ineffective for failing to object. *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001). And so we review the state court's admissibility ruling, keeping in mind that we are hesitant to second-guess state courts when they are interpreting state law. *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004). Here, the trial court was careful to exclude reference to a prior *conviction*, limiting the state to mentioning only Leiser's presence on the registry. Although Leiser is correct that a juror is likely to infer that he had been convicted of a sex crime, no Wisconsin or federal constitutional rule completely bars evidence of a prior sex crime in a sex-crime prosecution. *See United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005); *State v. Hunt*, 666 N.W.2d 771, 793-94 (Wis. 2003). Wisconsin courts even give greater latitude to the prosecution when seeking to admit evidence of a prior sex crime in child sex abuse cases. *State v. Hammer*, 613 N.W.2d 629, 636-37 (Wis. 2000); *State v. Davidson*, 613 N.W.2d 606, 615-19 (Wis. 2000). We find that the appellate court thoroughly analyzed the controlling test for admissibility of other-acts evidence, *see State v. Sullivan*, 576 N.W.2d 30, 32-33 (Wis. 1998), and came to a reasonable conclusion.

Next, Leiser argues that his trial counsel should have called the girls' father to testify. According to Leiser, the father would have provided critical information about the mother's state of mind when she first asked her daughters about Leiser. Specifically, Leiser asserts that the father would have testified that the mother was hysterical when she questioned her daughters, bolstering his theory of defense that the mother's excited state caused the girls to fabricate the assaults. In support, he points to a police report that he says conflicts with the trial testimony and asserts that the father's testimony would have resolved the conflict in his favor.

In reviewing the denial of Leiser's second postconviction petition, the Wisconsin Court of Appeals found no error. The court noted that even if the father had testified as Leiser supposed, the testimony would not have contradicted other evidence elicited at trial—the mother herself testified that she was upset when questioning her daughters about any possible sexual assault—and therefore the father's testimony would not likely have

changed the result of the trial. But more importantly, because Leiser offered no evidence about what the father's testimony would have been (i.e., through an affidavit by the father), the court found that he failed to show that the father's testimony would have helped him, thus dooming a claim that the lawyer was ineffective for not calling him to testify.

The Wisconsin appellate court's insistence on evidence of how the father would have testified is not unreasonable. On collateral review Leiser bears the burden to prove what the father's testimony would have been and how it would have helped him at trial. *See Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). He gave no such evidence to the state courts, nor did he provide any to the federal district court. His reliance on the police reports is misplaced. Even if they do conflict with trial testimony, the reports do not reveal how the father would have testified. Leiser's continued speculation about the father's testimony does not make the Wisconsin court's decision unreasonable.

Next, Leiser argues that counsel was ineffective for failing to object to the prosecutor's closing argument. Leiser believes that the prosecutor improperly disparaged his mother's credibility by describing her testimony that she knew where her son's hands were at the time of the alleged assaults as being a "patently absurd claim, an absurd claim." He also asserts that the prosecutor improperly bolstered the girls' testimony by describing their credibility as being "extremely high."[2]

The Wisconsin Court of Appeals rejected this contention as well. It noted that counsel in closing argument had considerable latitude and concluded that the prosecutor's remarks were all within permissible bounds: the prosecutor recounted the testimony of various witnesses, explained how the evidence supported the girls' credibility, and urged the jury to give its verdict based on the evidence it heard. Additionally, the appellate court noted that the trial court properly instructed the jury that the lawyers' closing arguments were not evidence, and the jury is presumed to follow that instruction. Because there was no error in the closing arguments, the Wisconsin court concluded that trial counsel was not ineffective for not raising the issue.

---

[2]In addition, he argues that the prosecutor's repeated references to him being a sex offender improperly influenced the jury. But he did not raise this before the Wisconsin appellate court, and so it is defaulted. *Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007).

We agree with the Wisconsin court that the statements were not improper. Wisconsin law allows the prosecution to suggest inferences from the evidence. *State v. Mayo*, 734 N.W.2d 115, 126-27 (Wis. 2007); *cf. United States v. Nunez*, 532 F.3d 645, 654 (7th Cir. 2008) (same for federal law). The phrases that Leiser identifies—when examined in the context of the entire argument—are based only on the evidence from trial; they did not infect the trial with unfairness.

Next, Leiser argues that counsel was ineffective for failing to object to his absence when the trial court and lawyers were discussing a request from the jury during deliberations. The note itself is not in the record, but the trial court later summarized its contents and the resolution on the record. The jury asked to rehear certain testimony of the mother and the eight year old concerning the timing of the disclosure. Leiser's counsel and the prosecution both agreed that one requested passage should not be read back because it was too long; the court instructed the jurors to rely on their collective memory of the testimony. The parties disagreed on whether another passage should be read back, and the trial court sided with Leiser's attorney not to have it read back, again instructing the jury to rely on their collective memory. Leiser now contends that the passages the jury wanted read were favorable to him, and had he been present he would have requested that they be read back, which would have led to his acquittal.

The Wisconsin Court of Appeals analyzed this claim directly rather than through the rubric of ineffective assistance of counsel. It acknowledged that it was error for Leiser not to be present during the discussion about the jury's note but concluded that the state had proven the error harmless beyond a reasonable doubt. The court reviewed the testimony of both the eight year old and the mother and found that neither favored Leiser. According to the court, the testimony was an explicit recounting by the girl of the alleged assault by Leiser, and a recounting by the mother of her inquiry to the child about an assault. In any event, the appellate court concluded that the trial court would probably not have allowed a rereading of the testimony given its express disinclination to have such a lengthy portion read back. Accordingly, it concluded that Leiser's presence would not have affected the jury's verdict.

Because the Wisconsin court reviewed the merits of this claim directly, we may review the Wisconsin court's decision rather than conduct our own ineffective-assistance analysis. *See Sturgeon v. Chandler*, 552 F.3d 604, 611-12 (7th Cir. 2009). We review whether the Wisconsin court's harmless-error finding was reasonable. *Johnson v. Acevedo*, 572 F.3d 398 (7th Cir. 2009). Ultimately, the Wisconsin court's finding that the testimony was unfavorable to Leiser is enough to dispose of this claim because the finding shows that the jury would have convicted Leiser even after rehearing the testimony. That factual finding is presumed correct absent clear and convincing evidence otherwise. 28 U.S.C. § 2254(e)(1).

Leiser argues that the omission of the jury note from the record leaves in question which passage of testimony the jury wanted read back.  He contends that "the jury *may* have been looking at the inconsistency of the testimony from the mother and alleged victims, or if the father was present, or if the mother was crying when she got off the phone or if the other children were in the room when the mother asked if Leiser ever touched them, or any other part of the record."  (emphasis added)  But this argument is not the sort of clear and convincing evidence that would warrant overturning the Wisconsin court's finding that the testimony was not favorable to Leiser.

Accordingly, we **AFFIRM** the judgment.