IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 5, 2009 Session

## STATE OF TENNESSEE v. ANDRA GUY

**Direct Appeal from the Criminal Court for Shelby County
No. 07-08613    W. Mark Ward, Judge**

_____

**No. W2008-01654-CCA-R3-CD  - Filed December 7, 2009**

_____

The Defendant-Appellant, Andra Guy, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony. The trial court sentenced Guy as a mitigated offender to 7.2 years in the county workhouse with a release eligibility of twenty percent. On appeal, Guy argues: (1) the evidence was insufficient to convict him, and (2) the trial court erred in failing to grant a motion for judgment of acquittal or a motion for new trial based on allegedly exculpatory polygraph evidence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J. C. MCLIN, JJ., joined.

William Gosnell, Memphis, Tennessee, for the Defendant-Appellant, Andra Guy.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Abby V. Wallace and Summer Morgan, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

This case concerns the aggravated robbery of Damien Echols in Memphis, Tennessee, on July 28, 2007. During the robbery, Echols' car, money, and cell phone were stolen.

On May 1, 2008, a Shelby County jury convicted Guy of aggravated robbery. On May 30, 2008, the trial court sentenced Guy to 7.2 years of confinement in the county workhouse. On June 9, 2008, Guy filed a motion for new trial, which the trial court denied by written order on July 18, 2008. Guy then filed a timely notice of appeal.

**Trial.** Damien Echols, the victim, testified that on July 28, 2007, he was robbed around midnight outside his godmother's house in Memphis, Tennessee. He said that when he walked

outside to get in his car, four men approached him from the side of his godmother's house. Three of the men came up to him, and the fourth man stood next to the victim's vehicle. One of the men, whom the victim later identified as Guy, the Defendant-Appellant in this case, was wearing a hoodie, dark colored pants, and a red bandana that slipped down to reveal his face for most of the robbery. The victim said that the man with the red bandana and another one of the men pointed their handguns at him and emptied his pockets, taking his cell phone, identification card, bank card, and the keys to his vehicle. He said that the man with the red bandana was five feet, seven inches tall, between seventeen and nineteen years old, and had a smaller build. The four men then jumped into his car and turned right on the first available street. The victim said that the entire robbery took between two and four minutes. He also said that the area where the robbery took place was extremely well lit because of the lights on the street and the motion-activated flood lights on his godmother's house. These lights enabled the victim to get a good look at the face of the man wearing the red bandana. Following the robbery, the victim called 9-1-1 and later gave a description of the four men involved in the robbery to the responding officers.

A few days after the robbery, the victim was browsing the My-Space website and saw a photograph of the man who wore the red bandana during the robbery. He immediately called the investigating officer, Detective Forrest Barrett, who instructed him to print out the picture. The victim met with Detective Barrett the next morning and gave him the photograph. Detective Barrett later showed the victim a photo spread that included five or six pictures, and the victim immediately identified the picture of Guy as the man who wore the red bandana during the robbery. The victim later identified Guy as one of his robbers at trial.

Forrest Bartlett, a detective with the Shelby County Sheriff's Department, testified that he was assigned to investigate the victim's robbery. He spoke with the victim on the phone about the incident and told him to notify him if he discovered any helpful information regarding the robbery. During this conversation, the victim told Detective Bartlett that "he thought . . . he recognized one of the suspects from . . . Melrose High School." Detective Bartlett stated that the victim called him back later that day and told him that he had found a photograph of one of his robbers on the My-Space website. The victim brought this photograph to their meeting on August 2, 2007, and identified the individual in the photograph as Andra Guy. Detective Bartlett subsequently presented a photo spread to the victim, and the victim identified a different photograph of Guy in "[f]ifteen [to] twenty seconds." Detective Bartlett said that he also interviewed Guy as part of his investigation. He stated that Guy was five feet and six or seven inches tall, weighed 140 to 150 pounds, and was eighteen years old. Detective Bartlett said that Guy waived his <u>Miranda</u> rights and told him that "he had no knowledge of [the offense against] the victim, Damien Echols" and that "he was hanging out in his neighborhood with a male by the name of Charles" during the time of the robbery. Detective Bartlett said that Guy was unable to provide Charles' last name, his address, or a description of Charles' house and said only that Charles lived "right around the corner from [him]." Detective Bartlett stated that although the victim's car was later recovered, he did not do any forensic tests, including a fingerprint test, on the vehicle because the car had been exposed to the elements, and he believed that such tests would have been ineffective. Detective Bartlett acknowledged that although the victim identified Guy, there was no physical evidence that connected Guy to the crime scene.

The State rested, and the defense moved for a judgment of acquittal on the basis that the victim's identification of Guy was uncorroborated. The trial court declined to grant the motion,

stating that "it's just a jury question whether they accredit the eye witness identification." The court determined that "[the evidence was] sufficient for a verdict beyond a reasonable doubt."

Andra Guy, the Defendant-Appellant, testified that he was eighteen years old. He stated that on July 28, 2007 at 12:17 a.m., he was "[a] cross the street at [his] friend's house, Charles Merritt, in the driveway." Guy said he arrived at Charles' house between 10:00 p.m. and 11:00 p.m. and did not leave until between 2:45 a.m. and 3:00 a.m. Guy admitted that he was unable to provide Charles' last name when he was interviewed by Detective Bartlett. However, Guy claimed that he provided Detective Bartlett with Charles Merritt's telephone number. Guy said that he had known Merritt since he was twelve years old.

Charles Merritt testified that Guy was in his driveway at his house on July 27, 2007. He said that Guy arrived at his house between 10:30 p.m. and 11:00 p.m., and did not leave until between 2:45 a.m. and 3:00 a.m., and that neither of them left during this time. Merritt stated that he and Guy were the only individuals in the driveway, but his grandmother was at home, although she stayed inside the entire time that Guy was there. Merritt said that even though he knew his friend Guy was arrested on August 3, 2007, he never contacted law enforcement about the fact that Guy was at his house the night of the robbery. After resting its case-in-chief, the defense renewed its motion for judgment of acquittal, which the trial court denied.

The State called one rebuttal witness, Detective Bartlett, who testified that when he asked Guy for Charles' telephone number, Guy told him that he did not know it. He said that the only telephone number provided by Guy was for an acquaintance of his named Tigra. However, when Detective Bartlett called Tigra, she was unable to give him any information about Charles. Detective Bartlett said that in preparation for trial, he learned the location of Charles Merritt's home, which was extremely distinctive because it had a lime green door and shutters, unlike any other house in the neighborhood. In addition, Merritt's house sat "catty-corner" on its lot so that it faced the intersection. Although Guy had told him that Charles lived around the corner from him, Detective Bartlett stated that Charles Merritt actually lived directly across the street.

At the close of the State's rebuttal proof, the defense renewed its motion for judgment of acquittal, which the trial court denied based on its previous rulings.

## ANALYSIS

**I. Sufficiency of the Evidence.** Guy argues that the evidence is insufficient to support his conviction and that the trial court erred in not granting his motions for judgment of acquittal. He also contends that the trial court should have granted him a new trial as the thirteenth juror under Tennessee Rule of Criminal Procedure 33(d). In response, the State contends that the proof was sufficient for the jury to find Guy guilty of aggravated robbery and that the trial court's judgment should be affirmed.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt; therefore, a defendant on appeal has the burden of showing that the evidence is insufficient to support the jury's verdict. <u>State v. Thacker</u>, 164 S.W.3d 208, 221 (Tenn. 2005) (citing <u>State v. Evans</u>, 108 S.W.3d 231, 237 (Tenn. 2003); <u>State v. Carruthers</u>, 35 S.W.3d 516, 557-58 (Tenn. 2000); <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982)). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in the State's favor. <u>Bland</u>, 958 S.W.2d at 659 (citing <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973)). Issues regarding the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the jury as the trier of fact, and this court does not re-weigh or re-evaluate the evidence. <u>Id.</u> (citing <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978), <u>superseded by statute on other grounds as stated in</u> <u>State v. Barone</u>, 852 S.W.2d 216, 218 (Tenn. 1993)). Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977); <u>Farmer v. State</u>, 343 S.W.2d 895, 897 (Tenn. 1961)).

"The identity of the perpetrator is an essential element of any crime." <u>State v. Robert Wayne Pryor</u>, No. M2003-02981-CCA-R3-CD, 2005 WL 901140, at *3 (Tenn. Crim. App., at Nashville, Apr. 19, 2005) (citing <u>State v. Thompson</u>, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving "the identity of the defendant as the perpetrator beyond a reasonable doubt." <u>Id.</u> (citing <u>State v. Sneed</u>, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995)). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. <u>Thompson</u>, 519 S.W.2d at 793. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." <u>State v. Radley</u>, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing <u>State v. Strickland</u>, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). This court stated that the identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. <u>Strickland</u>, 885 S.W.2d at 87 (citing <u>State v. Crawford</u>, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). In addition, as relevant here, this court has held that "the testimony of a victim, by itself, is sufficient to support a conviction." <u>Id.</u> (citing <u>State v Williams</u>, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)). Furthermore, the jury may reject an alibi defense. <u>Crawford</u>, 635 S.W.2d at 705. "The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses in support of the defense, and of the weight to be given their testimony." <u>Id.</u> (citing <u>Green v. State</u>, 512 S.W.2d 641 (Tenn. Crim. App. 1974)).

As relevant in this case, aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display or any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-401(a),- 402(a)(1) (2006). Here, the proof showed

that an aggravated robbery of the victim occurred on July 28, 2007. The victim testified that Guy's bandana fell from his face moments after the robbery began, and he was able to easily see Guy's face because of the light from the street lamps and the floodlights on his godmother's house. The victim later identified Guy on the My-Space website, in the six picture photo spread, and at trial. Although both Guy and Merritt testified that Guy had been at Merritt's home at the time of the robbery, the jury rejected this alibi defense and accredited the victim's identification of Guy as one of the robbers. This court will not re-weigh or re-evaluate the proof in this case. See Bland, 958 S.W.2d at 659. Accordingly, we conclude that the evidence was sufficient to support Guy's conviction for aggravated robbery.

Guy also argues that the trial court erred in failing to grant his motions for judgment of acquittal. However, "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000); State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); see also State v. Blanton, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). Because a motion for judgment of acquittal is a question of law, the trial court is permitted only to review the legal sufficiency of the evidence rather than the weight of the evidence. State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995) (citing State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)). Because we have already determined that the evidence was sufficient to support the conviction, Guy is not entitled to relief on this issue.

Guy further contends that the trial court should have granted him a new trial as the thirteenth juror. Tennessee Rule of Criminal Procedure 33(d) states, "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." Tenn. R. Crim. P. 33(d); see also State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995) (holding the trial court has a duty to serve as the thirteenth juror). Only if the record contains statements by the trial judge indicating disagreement with the jury's verdict or evidencing the trial judge's refusal to act as the thirteenth juror may an appellate court reverse the trial court's judgment. Carter, 896 S.W.2d at 122. Otherwise, appellate review is limited to sufficiency of the evidence pursuant to Rule 13(e) of the Rules of Appellate Procedure. State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). If the reviewing court finds that the trial judge has failed to fulfill his or her role as thirteenth juror, the reviewing court must grant a new trial. State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995). The record shows that the trial court agreed with the jury's verdict. Because we previously concluded that the evidence was sufficient to support the conviction, Guy is not entitled to relief on this issue.

**II. Polygraph Test Results.** Guy contends that the trial court erred in ruling that the results from a polygraph test taken after his jury trial were inadmissible at the motion for new trial hearing. He claims that the court should have granted his motions for judgment of acquittal in light of the allegedly exculpatory polygraph results. In addition, he asserts that the polygraph results, his sworn denial, and his alibi evidence, taken together, should have "necessitated a new trial." In response, citing State v. Hart, 911 S.W.2d 371, 377-78 (Tenn. Crim. App. 1995), the State argues that the trial court properly denied Guy's motion for new trial in light of the unreliability and inadmissibility of polygraph evidence. Also, citing Hicks v. State, 571 S.W.2d 849, 852 (Tenn. Crim. App. 1978), the State argues that if a defendant is granted relief based on affidavits filed in a motion for new trial,

then the State is denied the opportunity to test the accuracy of the information contained in the affidavit. The State asserts that in this case, Guy merely introduced a report, rather than an affidavit, which contained no information about the polygraph examiner's credentials, his methodology, or the examination conditions.

The record in this case indeed shows that Guy filed a motion for new trial arguing that the trial judge erred in failing to grant his motion for judgment of acquittal as a matter of law at the conclusion of the State's case-in-chief and at the conclusion of the trial. Guy attached a polygraph examiner's report, wherein Guy denied that he "participate[d] in that carjacking of Damien Echols" and denied that he "help[ed] carjack that man on Cochese Street." Within the report, the examiner opined that Guy's "responses . . . were not indicative of deception." The transcript from the motion for new trial hearing shows that the trial court determined that the evidence was sufficient to support the jury's verdict and consequently declined to exercise his power as the thirteenth juror to grant a new trial. Regarding the polygraph test results, the trial court stated:

> I don't know what to do about the lie detector test. Under our law, I really can't consider that. It is not admissible in evidence in any court. Technically, it should be stricken from this record, but I am not going to do that. I will let it go, as it is. There is no jury it is going in front of so the appellate courts can see it and do what they want. So, I am not going to strike it from this record, but I will say this, even if I put weight on that, it wouldn't change my mind. I don't feel like that I so disagree with this jury's verdict that I would overturn what the jury has decided in this case.

As an initial matter, we note that Guy failed to explicitly request that he be granted a new trial based on the polygraph test results in his motion for new trial. A defendant's failure to raise an issue of error, other than sufficiency of the evidence or sentencing, in a motion for new trial waives that issue for the purposes of appellate review. See Tenn. R. App. P. 3(e). Although Guy did not list the polygraph results as an issue in his motion for new trial, a copy of the polygraph report was attached to the motion for new trial, and a discussion of the polygraph report appears in the transcript from the motion for new trial hearing. Thus, notwithstanding waiver, we have reviewed this issue and conclude that the trial court properly denied a new trial based on the polygraph results.

Although not entirely clear from his brief, Guy argues that if "incriminating statements" made during a polygraph exam are admissible against a defendant, then when "exculpatory statements" are made during a polygraph examination, the results of the polygraph examination itself should be admissible. He concedes that "the reliability of polygraph [examinations] is an open question in Tennessee" but seeks their admission because "defendants can be exonerated based upon these tests." Finally, he requests this Court to "reverse its long held view and allow the admission of polygraph examination[s] when they are voluntary."

Pursuant to Tennessee Rule of Evidence 402, "[e]vidence which is not relevant is not admissible." The Tennessee courts have uniformly held that "polygraph evidence is inherently unreliable, and therefore irrelevant and inadmissible." State v. Pierce, 138 S.W.3d 820, 826 (Tenn. 2004) (citing State v. Torres, 82 S.W.3d 236, 252 n.20 (Tenn. 2002); State v. Irick, 762 S.W.2d 121, 127 (Tenn. 1988); Grant v. State, 374 S.W.2d 391, 392 (Tenn. 1964); Marable v. State, 313 S.W.2d

451, 456 (Tenn. 1958); State v. Campbell, 904 S.W.2d 608, 614-15 (Tenn. Crim. App. 1995) (citing additional cases)). Moreover, in State v. Pierce the Tennessee Supreme Court held that trial courts are prohibited from considering polygraph examination results when imposing sentences. Id. In this case, the trial court said that it could not consider the polygraph results because they were "not admissible in evidence in any court" and "[t]echnically . . . should be stricken from this record." The court further determined that "even if I put weight on [the polygraph results], it wouldn't change my mind. I don't feel like that I so disagree with this jury's verdict that I would overturn what the jury has decided in this case." After applying this law to the facts of Guy's case, we conclude that the trial court did not err in refusing to grant a new trial on the basis of the polygraph results.

We must additionally note that Guy cites and misinterprets the holding in State v. Damron, 151 S.W.3d 510 (Tenn. 2004). The question in Damron was whether the State could introduce voluntary statements made by the defendant during the post-instrument phase of the polygraph examination. In resolving the issue, the Tennessee Supreme Court distinguished voluntary statements as "separate and discrete from polygraph tests." Id. at 517. Given this distinction, it is clear the evidence Guy seeks to admit for the court to consider is not his voluntary statements because he testified to the same effect at trial. Rather, Guy seeks to admit for the court to consider the polygraph examiner's determination that he was being truthful at the time that he gave the statements. We conclude that Guy's attempt to "equat[e] test results with statements made during the polygraph test is a mistake because '[t]he results of a polygraph examination involve the test-giver's evaluation of responses' while '[s]tatements involve direct responses to questioning and not the evaluation of the credibility in responding.'" Id. (quoting State v. Smith, 715 P.2d 1301, 1310 (Mont. 1986)). Accordingly, Guy is not entitled to relief on this issue.

## CONCLUSION

Upon review, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE