IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 24, 2018 Session

## STATE OF TENNESSEE v. QUINTIS MCCALEB

**Appeal from the Criminal Court for Hamilton County**
**No. 294000   Barry A. Steelman, Judge**

_____

## No. E2017-01381-CCA-R9-CD

_____

The State, pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, appeals the trial court's grant of Defendant's motion to suppress inculpatory statements made during his post-polygraph interview.  The trial court found that the statements were voluntary but determined that they were inadmissible under Tennessee Rule of Evidence 403 because Defendant would be required to reference the polygraph examination to provide context for Defendant's statements made during the post-polygraph interview.  Concluding that the trial court abused its discretion by excluding the statements, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

**Tenn. R. App. R. 9 Interlocutory Appeal; Judgment of the Criminal Court**
**Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Neal Pinkston, District Attorney General; and Leslie Ann Longshore, Assistant District Attorney General, for the appellant, State of Tennessee.

Steve E. Smith, District Public Defender, and Joseph Lodato, Assistant District Public Defender, for the appellee, Quintis McCaleb.

## OPINION

*Factual and Procedural Background*

Defendant, Quintis McCaleb, agreed to take a polygraph examination while facing allegations of sexual contact with the victim, Defendant's minor relative. Sergeant Malcolm Kennemore of the Chattanooga Police Department conducted a polygraph examination on Defendant. Before the polygraph examination was administered, Defendant told Sergeant Malcolm Kennemore that he had been subjected to inappropriate sexual contact as a child. He stated that whoever had sexual contact with the victim in this case must have gone through something similar in the past. However, Defendant maintained that he did not engage in any sexual contact with the victim. Still prior to the polygraph, Sergeant Kennemore confronted Defendant with the specific allegations made against him, and Defendant denied that the allegations occurred. Defendant claimed that he was sick on the day of the alleged crime, and the only time that the victim came into his room was to retrieve her dog. Defendant claimed that "somehow" on the day of the alleged crime, the victim told her father and mother that he "touched her and did all that extra stuff with her." Throughout the polygraph examination, Defendant denied the allegations against him.

Immediately after the polygraph examination and under questioning by the Sergeant Kennemore, Defendant broke down and admitted to the allegations during the post-polygraph interview. The examination machinery was removed from Defendant, but while seated in the same chair as he was during the examination, Defendant was faced with the results of the polygraph examination and many pointed and accusatory questions by Sergeant Kennemore. The following are just some of the references to the polygraph examination made during the post-polygraph interview:

> I'm going through the polygraph charts, evaluating them, and it's obvious that something happened with you and her. . . . But it's obvious that some kind of contact like this happened with you and her.

> When I asked you those questions specifically about, like "Did you touch her bare vagina?" "Did she touch your bare penis?" It's obvious there's something happening there, that something occurred with that, so I'm going to help you through this. We'll work this out, okay?
> . . .

> I sit here and do these polygraph exams every day, so I've had circumstances and situations just like this on many times, all right?

- 2 -

. . .

There are some people that come in here that talk to me [that] I do polygraphs with who they [sic] are bad people. . . .

. . .

Now, again, I – doing the polygraph charts, I see something happened with her.

. . .

Well, let me be real clear, okay? The polygraph, it doesn't get into your subconscious . . . or anything like that. It doesn't look at anything that you're not thinking about right now. It doesn't have that capability. I can't do that. I can't get into your . . . subconscious mind. All I can do with a polygraph is look at and say, ask you specific questions and say "You're thinking about something with that question," okay? . . . I'm going to ask you a question, for instance, "Did you touch that girl's bare vagina?" I can tell without any question whatsoever that, yeah, you did. I can tell it with a polygraph. There's no question at all in my mind with that.

. . .

I can tell that with the polygraph. I can see it on that, the charts there as I look at the charts on the computer screen. When I print out the charts, I do a – I can see it on the charts themselves when I print these charts. It's not just my judgment, okay? In the whole mathematical scoring rhythm that I do with these; right? I've been doing this for years, okay it's a whole mathematical process and you come out with plus and minus numbers, basically. When you get down here to the bottom, this is what really is concerning.

. . .

[T]hat means deception indicated, so it shows that you were being deceptive about these questions.

. . .

This is a computer printout. It says "deception indicated. Probability of deception is greater than 99 percent." And it never says a hundred. It's programed with that.

. . .

I can't put words in your mouth. I know that something happened with this girl. There's really no questions whatsoever in my mind with that.

. . .

I'm going to have to write a report that says, "I asked him these questions you wanted to know the answer to, and yes, he absolutely did this with this girl. He was lying to me, and he did this with this girl." . . .

. . .

Okay. Well, you may not remember any of those, but what I can tell from the polygraph when I asked you those questions . . . what I can tell from the polygraph is that you absolutely do remember touching her vagina. I mean, there is no question about that.

. . .

Well, from my part there's a hundred percent chance because I can tell that with the polygraph, there's no question, okay? That's not even, like, a yes or no at this point . . . whether you did or not. It's obvious that you did.

Faced with these references to the polygraph examination results, Defendant admitted to the sexual contact with the victim. The entire polygraph examination procedure, including the pre-polygraph interview and the post-polygraph interview, was video recorded.

Thereafter, a Hamilton County Grand Jury indicted Defendant with two counts of rape of a child and one count of aggravated sexual battery. In the pre-trial proceedings various hearings were held on the admissibility of the post-polygraph interview.

At the hearing on the motion to suppress the post-polygraph interview, the State explained that they sought to introduce only the video of the post-polygraph interview and not "anything related to his willingness to take a polygraph or the results of the polygraph." The State conceded that there were portions of the post-polygraph interview that would have to be redacted because they referenced a polygraph examination or ran afoul of other rules of evidence.

Defense counsel argued that the video could not be redacted without causing Defendant's statements to be taken out of context. Additionally, Defense

- 4 -

counsel argued that Defendant had a right to have either the whole interview admitted or none of it. Defense counsel referred to the rule of completeness and argued that there were times in the video where Defendant denied the allegations against him and that, after the video was redacted, Defendant would not be able to introduce those denials because they were interwoven with references to the polygraph examination. Defense counsel argued, "[Defendant is] entitled to the context of the full interview, but there's so much in there that is inadmissible that it's basically impossible to introduce it in a redacted form or complete [form] that it should be excluded." Defense counsel went on to say, "Surely the State's not prejudiced by its omission, Your Honor. Sergeant Kennemore can testify to anything that was said during the polygraph itself if he doesn't reference the polygraph, and he can relay all of [Defendant's] answers during the interview without actually showing it." Defense counsel went on to say that the video would be cumulative.

The State conceded that any direct reference to the polygraph examination would have to be excluded but argued that some of Sergeant Kennemore's statements regarding whether Defendant was withholding information or lying were derived from Sergeant Kennemore's observations during the interview.

During the hearing in which the trial court made its oral ruling excluding the post-polygraph interview, the trial court recounted the various references to the polygraph examination. The trial court noted that testimony about polygraph examinations is not admissible for any purpose. However, the trial court also noted that voluntary statements made at or around the time of a polygraph examination could be admissible. The trial court factually distinguished this case from *State v. Damron*, 151 S.W.3d 510 (Tenn. 2004) because Defendant was subject to an interrogation in this case. The court then quoted the following language from *Damron* saying, "'Voluntary statements made during the course of a polygraph examination are admissible,' and the Court emphasizes these words, 'so long as they are consistent with other applicable constitutional and evidentiary rules.'" 151 S.W.3d at 516.

The trial court found that Defendant's statements were voluntary, but the trial court excluded the statements under Tennessee Rule of Evidence 403, commenting:

> [W]here our courts have ruled that polygraph examinations and the results of those examinations are inherently untrustworthy, that they're not probative, the fact that [Defendant] would need to refer to the polygraph examination in order to explain the context of his

- 5 -

statements so that the jury could fully understand his statements and why he may have said what he did, that creates a danger, a high danger of unfair prejudice, because a jury might speculate about the results of the polygraph, and our courts have found that polygraph results are not probative.

After weighing the probative value against the likelihood of unfair prejudice according to Tennessee Rule of Evidence 403, the trial court held that "evidence of the defendant's statements, even though voluntary, should not be admitted because the probative value of any statement would be substantially outweighed by the danger of the unfair prejudice that would come from the jury being aware that those statements were made post-polygraph." The trial court clarified that his ruling applied to both the video and any oral recitation of Defendant's statements by Sergeant Kennemore.

With the trial court's permission, the State's interlocutory appeal soon followed.

*Analysis*

The State argues that the trial court abused its discretion when it excluded the video of the voluntary statements of Defendant and Sergeant Kennemore's testimony regarding the voluntary statements of Defendant during the post-polygraph interview. Defendant disagrees and argues that the trial court did not abuse its discretion.

Let us begin by restating what should by now be obvious. Polygraph evidence is never admissible in Tennessee. *State v. Randall Kenneth Reed*, No. E2015-01638-CCA-R3-CD, 2017 WL 1959497, at *8 (Tenn. Crim. App. May, 11, 2017) (citing *State v. Sexton*, 368 S.W.3d 371,409 (Tenn. 2012)), *no perm. app. filed*. Our supreme court has repeatedly held that the results of a polygraph examination are inherently unreliable. *Sexton*, 368 S.W.3d at 409 (citing *State v. Torres*, 82 S.W. 3d 236, 252 n.20 (Tenn. 2002); *State v. Hartman*, 42 S.W. 3d 44, 61-62 (Tenn. 2001)). Additionally, evidence of a defendant's willingness or refusal to submit to a polygraph examination is likewise inadmissible. *Randall Kenneth Reed*, 2017 WL 1959497, at *6 (citing *Sexton*, 368 S.W.3d at 409). Thus, it is abundantly clear that any direct or indirect reference to the polygraph examination or the polygraph examination results is generally inadmissible.

However, "[s]tatements are not inadmissible merely because they were made during the course of a polygraph examination." *State v. Damron*, 151

- 6 -

S.W.3d 510, 516 (Tenn. 2004). If a statement made during the course of a polygraph examination is voluntary, it is admissible as long as it is consistent with "other applicable constitutional and evidentiary rules." *Id.* The mere fact that polygraph examinations are neither reliable nor admissible does not undermine the reliability of voluntary statements made by a defendant during the polygraph examination. *Id.* at 517. Also, "[c]onfronting a suspect with polygraph results ordinarily is not coercive or unreasonable." *Id.* at 518 (citing *Wyrick v. Fields*, 459 U.S. 42, 48 (1982). We view voluntary admissions of guilt as inherently desirable. *Id.* at 517 (citing *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)).

The trial court did not exclude Defendant's statements in the post-polygraph interview because they were involuntary, and that issue is not before us on this appeal. Rather, the trial court ruled that the statements were inadmissible under "other applicable constitutional and evidentiary rules," namely Tennessee Rule of Evidence 403. Tennessee Rule of Evidence 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Tennessee Rule of Evidence 403 favors the admissibility of relevant evidence. *See* Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence, § 4.03[4] (6th ed. 2011). Courts should "sparingly" take the "extraordinary step" of excluding otherwise relevant evidence under Tennessee Rule of Evidence 403. *White v. Beeks*, 469 S.W.3d 517, 528 (Tenn. 2015) (citing *Levine v. March*, 266 S.W.3d 426, 439 (Tenn. Ct. App. 2007)).

The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. *See State v. McCoy*, 459 S.W.3d 1, 8 (Tenn. 2014); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993). An abuse of discretion occurs when the trial court (1) applies an incorrect legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence. *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

Our analysis must focus on the admission of the voluntary statements made by Defendant during the post-polygraph interview. Those statements amount to a confession to the alleged crime. Though many of Defendant's answers are "mm-hmm" or "hmm-mm" to leading questions by Sergeant Kennemore, there are other times where Defendant clearly answers "yes" or "no." Additionally, Defendant explains some of the details regarding the crime in the second half of the

interview.  The probative value of Defendant's statements is extremely high.  They amount to, at some level, a confession to the crime.

Next, we turn to the danger of unfair prejudice.  The trial court determined that the danger of unfair prejudice was the fact that Defendant "would need to refer to the polygraph examination in order to explain the context of his statements so that the jury could fully understand his statements."  Therein lies the trial court's erroneous assessment of the evidence and abuse of discretion.  First, the trial court incorrectly evaluated the danger of unfair prejudice resulting from Defendant's presumed response to the evidence and not the danger of unfair prejudice resulting from the statements themselves.  *See State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002) (stating that the probative value of the evidence is weighed against "the risk that *the evidence* will unfairly prejudice the trial").  The statements, in and of themselves, would not unfairly prejudice Defendant because with adequate redaction, Defendant's statements would appear as nothing more than a confession.  Secondly, Defendant's responses to the proffered statements need not include a reference to the polygraph examination.  Without a reference to the polygraph examination, Defendant could still provide context for the statements by showing that they were part of an extended interrogation where Defendant was repeatedly confronted with the accusations, asked leading questions, and accused of lying.

Additionally, Defendant is not required to do anything at all in response to the introduction of the statements.  Tennessee Rule of Evidence 106 says that Defendant "may require" the introduction of another part of the writing or recorded statement to provide context and promote fairness, but it does not require Defendant to provide context to the statements.  Though in different circumstances, our supreme court has held that redaction of a statement to exclude mention of a polygraph examination "did not offend the fairness concerns of [Tennessee Rule of Evidence] 106" because there were other avenues for the defendant to provide context.  *State v. Hartman*, 42 S.W.3d 44, 61-62 (Tenn. 2001).  We believe the same is true for the case before us.  Defendant has the ability to provide context for the statements even without mention of the polygraph examination.

Furthermore, Defendant cannot be required to testify to provide context.  *See* U.S. Const. amend. V; Tenn. Const. art. I, § 9; *State v. Jackson*, 444 S.W.3d 554, 585 (Tenn. 2014).  The quandary Defendant has herein of either presenting his side of the story, without reference to the polygraph, or allowing the evidence to be admitted without testifying to his version of the events is no different than the dilemma that any criminal defendant faces when making the onerous decision

about whether to testify at his own trial. If Defendant chooses not to testify or provide context with reference to the polygraph examination, Defendant's statements from the post-polygraph interview could possibly be admitted into evidence uncontroverted. On the flip side, if Defendant chooses to testify, he is subject to cross-examination. At any rate, our analysis must focus on Defendant's statements, in and of themselves, and not Defendant's reaction to those statements.

To hold that the presumed need to reference a polygraph examination to establish context of a post-polygraph statement runs afoul of Tennessee Rule of Evidence 403 would eviscerate our supreme court's holding in *Damron* that voluntary statements made during the course of a polygraph examination are admissible. So broad of a holding would cause nearly every voluntary statement made in such a scenario to be inadmissible under Tennessee Rule of Evidence 403, and such cannot be the case.

Therefore, we determine that the trial court abused its discretion by excluding Defendant's voluntary statements made during the post-polygraph interview under Tennessee Rule of Evidence 403. Subject to redactions consistent with this opinion and other applicable constitutional and evidentiary rules, the video of the post-polygraph statements by Defendant and the testimony of Sergeant Kennemore recounting Defendant's statements are admissible.

We envision a video being played to the jury that has been edited to splice together the admissible statements of Defendant. Not only should the video be edited to remove any statements about the polygraph examination, but it should be cropped to the extent that it is possible to eliminate obvious visual cues that would lead a casual observer to connect Defendant's statements to a polygraph examination. If it is believed that the jury may be able to ascertain that portions of the video have been cut out, it may be necessary for the trial court to instruct the jury that those portions of the video were removed to ensure that the jury did not make a decision on an impermissible basis.

*Conclusion*

For the aforementioned reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings.

_____

TIMOTHY L. EASTER, JUDGE